LARKIN v BAY CITY PUBLIC SCHOOLS

Docket No. 78-1302. Submitted January 16, 1979, at Detroit.—Decided March 20, 1979. Leave to appeal denied, 406 Mich 979.

Plaintiff Mary A. Larkin was employed by the Bay City School District as a hall monitor during the school year, but was not employed during summer vacation periods. By a letter of March 25, 1975, plaintiff was informed by the district that it did not plan to rehire her for the 1975-1976 school year, and her employment was terminated as of June 7, 1975. Plaintiff applied for unemployment benefits on June 9, 1975, which benefits were denied by the Michigan Employment Security Commission. Plaintiff appealed to the Michigan Employment Security Commission Appeal Board, which held that she was not entitled to unemployment benefits during the summer months, those months constituting a "denial period" under the Michigan Employment Security Act. Plaintiff appealed to circuit court, arguing that the appeal board failed to properly apply the law and that the "denial period" provision of the act violated the equal protection clauses of the state and Federal constitutions. The Ingham Circuit Court, Michael G. Harrison, J., affirmed the decision of the appeal board. Plaintiff appeals. *Held:*

1. A school district employee is separated from his job, for the purpose of determining whether a "denial period" applies, on the last day of his employment.

2. A "period between two academic years or terms", as used in the Michigan Employment Security Act, is to be determined by the calendar established by the school district, not by an individual's particular circumstances.

3. A constitutional challenge on equal protection grounds of

---

REFERENCES FOR POINTS IN HEADNOTES

[1] 76 Am Jur 2d, Unemployment Compensation §§ 93, 94.
[2, 3] 76 Am Jur 2d, Unemployment Compensation § 32.
[4] 76 Am Jur 2d, Unemployment Compensation § 13.
[5] 16 Am Jur 2d, Constitutional Law § 172.
[6] 76 Am Jur 2d, Unemployment Compensation § 5.
[7] 76 Am Jur 2d, Unemployment Compensation § 6.
[8] 76 Am Jur 2d, Unemployment Compensation § 38.

the "denial period" provisions of the Michigan Employment Security Act is reviewed under the traditional rational basis test.

4. The "denial period" provision of the Michigan Employment Security Act is not arbitrary in that it is rationally related to the purpose of the Michigan Employment Security Act.

5. The exception of state employed nonprofessional school employees from the "denial period" provision, as provided for in the Michigan Employment Security Act, does not create an impermissible differentiation between persons of the same class.

Affirmed.

1. UNEMPLOYMENT COMPENSATION — EMPLOYMENT SECURITY COMMISSION — APPEAL BOARD — COURTS — STANDARD OF REVIEW — STATUTES.

The standard for judicial review of a decision of the Employment Security Commission Appeal Board, where the facts are not contested, is whether the appeal board properly applied the law (MCL 421.38; MSA 17.540).

2. UNEMPLOYMENT COMPENSATION — STATUTES — CONSTRUCTION — MICHIGAN EMPLOYMENT SECURITY ACT — SCHOOL DISTRICT EMPLOYEES — DENIAL PERIOD.

A school district employee is separated from his job, for the purpose of determining whether a "denial period" for receiving unemployment compensation benefits applies, on the last day of his employment (MCL 421.27[i][3]; MSA 17.529[i][3]).

3. UNEMPLOYMENT COMPENSATION — STATUTES — CONSTRUCTION — MICHIGAN EMPLOYMENT SECURITY ACT — SUCCESSIVE ACADEMIC YEARS.

A "period between two academic years or terms", for the purpose of determining whether a "denial period" for receiving unemployment compensation benefits applies, is to be determined by the calendar established by the school district, not by an individual's particular circumstances (MCL 421.27[i][3]; MSA 17.529[i][3]).

4. CONSTITUTIONAL LAW — STATUTES — EQUAL PROTECTION — TEST.

A constitutional challenge on equal protection grounds to the "denial period" provision for school district employees of the Michigan Employment Security Act is reviewed under the traditional rational basis test, rather than the fair and substantial relation test, since no discrete exception exists and the

legislative history demonstrates that this provision of the act is experimental in nature (MCL 421.27[i]; MSA 17.529[i]).

5. CONSTITUTIONAL LAW — STATUTES — EQUAL PROTECTION — RATIONAL BASIS TEST.

Legislation reviewed under the rational basis test for equal protection comes clothed with a presumption of constitutionality, with the burden upon the one challenging the statute's classification to show that the classification is essentially arbitrary and capricious and fails to rationally further any legitimate state purpose.

6. UNEMPLOYMENT COMPENSATION — STATUTES — CONSTRUCTION — MICHIGAN EMPLOYMENT SECURITY ACT — PURPOSE.

The purpose of the Michigan Employment Security Act is to safeguard the general welfare through benefits intended to ameliorate the effects of involuntary unemployment; but the act is not intended to increase the compensation of wage earners employed on a fixed, but somewhat irregular, schedule (MCL 421.2; MSA 17.502).

7. UNEMPLOYMENT COMPENSATION — DENIAL PERIOD — SCHOOL DISTRICT EMPLOYEES — MICHIGAN EMPLOYMENT SECURITY ACT.

The "denial period" provision relative to school district employees contained in the Michigan Employment Security Act is not arbitrary in that it is rationally related to the purpose of the act; the maintenance of fiscally sound school districts and social welfare systems are legitimate legislative concerns (MCL 421.27[i]; MSA 17.529[i]).

8. UNEMPLOYMENT COMPENSATION — STATE EMPLOYEES — CLASSIFICATION — MICHIGAN EMPLOYMENT SECURITY ACT.

The exception of state employed nonprofessional school employees from the "denial period" provisions of the Michigan Employment Security Act is not an impermissible differentiation between persons of the same class (MCL 421.27[i][2]; MSA 17.529[i][2]).

*Kasoff, Young, Gottesman, Kovinsky, Friedman & Walkon* (by *John C. Claya),* for plaintiff.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, and *E. J. Setlock,* Assistant Attorney General, for the Michigan Employment Security Commission.

*Lambert & Leser, P.C.,* for Bay City Public Schools.

Amicus Curiae:

*Fieger, Cousens & Boesky,* for the Michigan Federation of Teachers.

Before: D. C. RILEY, P.J., and J. H. GILLIS and MACKENZIE, JJ.

D. C. RILEY, P.J. Plaintiff appeals by right a March 10, 1978, order of the Ingham County Circuit Court affirming the decision of the Michigan Employment Security Commission Appeal Board that she was ineligible for unemployment benefits during the summer months of 1975.

Plaintiff was employed by the Bay City Schools as a hall monitor, beginning work in February, 1973, and working through succeeding school years, but never during the summer vacation periods.

By letter dated March 25, 1975, plaintiff was informed by the Bay City School District that it did not plan to rehire her for the 1975-1976 school year, and that her employment was terminated as of June 7, 1975. Plaintiff applied for unemployment benefits on June 9, 1975, which benefits were initially denied by the Michigan Employment Security Commission. Following two unsuccessful administrative hearings, plaintiff appealed to the Michigan Employment Security Commission Appeal Board on April 7, 1976, which held that under §§ 27(i)(2) and 27(i)(4) of the Michigan Employment Security Act, MCL 421.27(i); MSA 17.529(i), the summer months of 1975 constituted a "denial period", during which she was not entitled to

unemployment benefits. From the adverse ruling in circuit court, plaintiff brings this appeal.

The standard for judicial review of a decision of the Michigan Employment Security Commission Appeal Board appears in MCL 421.38; MSA 17.540, which states:

"(1) The circuit court * * * may review questions of fact and law on the record made before the referee and the board of review involved in a final order or decision of the board, and may make further orders in respect thereto as justice may require, but the court may reverse an order or decision only if it finds that the order or decision is contrary to law or is not supported by competent, material, and substantial evidence on the whole record.

* * *

"(4) An appeal may be had from the decision of the circuit court in the same manner as provided by the laws of this state with respect to appeals from circuit courts."

The facts in this case are not contested. Therefore, we review the circuit court's determination that the appeal board had properly applied the law. See MCL 600.308(1); MSA 27A.308(1), GCR 1963, 801.3(1), *Lyscas v Chrysler Corp,* 76 Mich App 55, 59-60; 255 NW2d 767 (1977), *Baker v General Motors Corp,* 74 Mich App 237, 244-245 fn 2; 254 NW2d 45 (1977), *lv gtd* 402 Mich 828 (1977). The statute in effect at the time of plaintiff's request for benefits[1] reads as follows:

"(i) Benefits based on service in employment * * * shall be payable in the same amount, on the same terms, and subject to the same conditions as compensa-

---

[1] This section was substantially rewritten in 1977. See 1977 PA 277, § 1; MCL 421.27(i); MSA 17.529(i).

tion payable on the basis of other service subjects to this act, except that:

\* \* \*

"(2) Benefits based on service for a school district, a community college district, a school or educational facility owned or operated by the state, or a school operated by a political subdivision of the state shall not be paid to an individual for a week of unemployment within a denial period, as defined in this subsection, if the individual normally would not perform services during that period. A requalification period, however, may be served during a denial period. This subdivision shall not deny benefits to an employee of the Michigan school for the blind, the Michigan school for the deaf, or the state technical institute and rehabilitation center, except for those serving in an instructional, research, professional, or principal administrative capacity. For the purpose of this subdivision service in a professional capacity means service in a position which requires a bachelor's degree as an educational requirement.

"(3) Notwithstanding subdivision (2), the denial of benefits shall not be applicable to an individual who has been separated from his job under nondisqualifying circumstances and his employment relationship severed more than 7 calendar days before the end of the academic year or term, vacation period, or holiday recess, \* \* \*.

"(4) A 'denial period' for purposes of this subsection is a vacation period or holiday recess occurring during the academic year, a period between 2 successive academic years or terms, or a period of paid sabbatical leave provided for in the individual's contract." MCL 421.27(i); MSA 17.529(i).

Plaintiff's initial argument involves a bifurcated allegation. First, she maintains that the March 25, 1975, notice of termination established both job separation and severance of the employment relationship more than seven days before the end of the academic year, thus removing her from the scope of § 27(i), which would otherwise deny her

benefits. In addition, she seeks to circumvent application of the "denial period" by claiming the absence of a period "between two successive academic years or terms". We do not agree with either assertion.

First, the most reasonable interpretation of § 27(i)(3) requires that the mere giving of notice of a future termination date does not serve to *presently* abrogate the employment relationship. Rather, for the simple reason that plaintiff continued to work, we perceive severance to occur on the last day of employment.

Second, it is equally clear that plaintiff was not an employee of the Bay City Schools during the summer months of 1975, and that the unemployment occurred during "a period between two successive academic years or terms". Plaintiff contends that because she would not be reemployed in September 1975, there is no succeeding academic year. However, plaintiff's claim that a subjective standard should be used for determining holidays, vacations, or the period between terms or school years would render § 27(i)(4) meaningless. The existence of an academic year, as envisioned by the Legislature, is to be determined by the objective criteria of the calendar established by the district, and not by the individual's particular circumstances.

In addition, § 27(i)(1), which applies to employees of higher education institutions, provides that the denial period is inapplicable if the employee does not have a contract for the following academic year.[2] The Legislature could have included this provision in 27(i)(3); however; it chose not to do so.

_____

[2] "(1) Benefits based on service in an instructional, research, or principal administrative capacity in an institution of higher education as defined in section 53(2) shall not be paid to an individual for a week of unemployment which begins during the period between 2 successive academic years, during a similar period between 2 regular

Finally, the record shows that plaintiff did, in fact, resume her work in September of 1975, thus rendering her claim moot. We therefore conclude that the circuit court properly affirmed the appeal board's denial of benefits.[3]

Plaintiff also urges us to find § 27(i) violative of the Federal and state equal protection clauses.[4] Initially, we note, and plaintiff concedes, that we are concerned with neither a "fundamental right" nor a "suspect classification" requiring a strict scrutiny standard of appellate review under which the government must demonstrate a "compelling state interest". See, *e.g., Roe v Wade,* 410 US 113; 93 S Ct 705; 35 L Ed 2d 147 (1972), *Shapiro v Thompson,* 394 US 618; 89 S Ct 1322; 22 L Ed 2d 600 (1969). We deal here with economic and social welfare legislation, an area in which the Michigan Supreme Court has promulgated two different equal protection standards: the traditional rational basis test, and a more exacting standard whereby a classification must possess a fair and substantial relation to the object of the legislation. *Manistee Bank & Trust Co v McGowan,* 394 Mich 655, 669-670; 232 NW2d 636 (1975).

terms, whether or not successive, or during a period of paid sabbatical leave provided for in the individual's contract, if the individual has a contract or contracts to perform services in such a capacity for an institution of higher education for both of the academic years or both of the terms." MCL 421.27(i)(1); MSA 17.529(i)(1).

[3] With 1977 PA 277, § 1, the Legislature amended the sections of the Employment Security Act under scrutiny in this case. In essence, the amendments provide for the denial of benefits under the same circumstances as before, but only if "there is a reasonable assurance that the individual will perform the service in the period immediately following the vacation or holiday recess". MCL 421.27(i); MSA 17.529(i). Thus, in the future, plaintiffs situated like plaintiff here would be entitled to receive unemployment benefits from the date they left their employment, where there is no reasonable assurance they would resume employment with the school system in the next academic year. Plaintiff, however, was denied benefits under the provisions of the former act.

[4] US Const, Am XIV, Const 1963, art 1, § 2.

We decline plaintiff's advocation to adopt the more stringent approach. The Court in *Manistee* specifically noted under what circumstances the fair and substantial relation test might be employed:

"* * * [A]t least where the challenged statute carves out a discrete exception to a general rule and the statutory exception is no longer experimental, the substantial-relation-to-the-object test should be applied.

* * *

"Where a classification scheme creates a discrete exception to a general rule and has been enforced for a sufficiently long period of time that all the rationales likely to be advanced in its support have been developed, a court should fully examine those rationales and determine whether they are sound." *Manistee, supra* at 671-672.

We are not persuaded that a discrete exception exists in the present case; school employees are in no way prevented from collecting benefits if they are truly unemployed. Further, the recent alterations to § 27(i)[5] plainly reveal the legislative policies and goals of that portion of the statute to be experimental in nature.

Hence, we conclude that the instant legislation is to be examined by the traditional rational basis standard, under which it comes before us clothed with a presumption of constitutional validity. *Manistee, supra* at 667. The burden is on the person challenging the classification to show that it does not rest upon any reasonable basis: that it is essentially arbitrary, capricious, and fails to rationally further any legitimate state purpose. *Manistee, supra* at 668, *Foreman v Oakland County Treasurer,* 57 Mich App 231, 240; 226

---

[5] 1975 PA 42, § 1, 1977 PA 277, § 1.

NW2d 67, *lv den* 394 Mich 815 (1975), *Grayson v Board of Accountancy,* 27 Mich App 26, 31-32; 183 NW2d 424 (1970), *People v Raub,* 9 Mich App 114, 120-121; 155 NW2d 878 (1967). The classification will be sustained "if any state of facts reasonably can be conceived that would sustain it * * *". *Cruz v Chevrolet Grey Iron, Division of General Motors Corp,* 398 Mich 117, 127; 247 NW2d 764 (1976), quoting *Lindsley v Natural Carbonic Gas Co,* 220 US 61, 78-79; 31 S Ct 337; 55 L Ed 369 (1911).

The purpose of the Employment Security Act is to safeguard the general welfare through the dispensation of benefits intended to ameliorate the disastrous effects of involuntary unemployment on workers and their families. MCL 421.2; MSA 17.502. It is not designed to increase the compensation of wage earners employed on a fixed, but somewhat irregular, schedule.

Had the Legislature intended that all persons would be eligible for assistance regardless of the reason for their nonworking status, it would have passed a law granting such comprehensive benefits. Instead, it chose to adopt a program denying benefits in certain instances and for certain reasons. The Legislature is not required to choose between addressing every aspect of a problem or not addressing the problem at all. *Manistee, supra* at 672, *Van Slooten v Larson,* 86 Mich App 437, 451; 272 NW2d 675 (1978).

"* * * [C]onsistently with the Equal Protection Clause, a State 'may take one step at a time, addressing itself to the phase of the problem which seems most acute to the legislative mind * * *. The legislature may select one phase of one field and apply a remedy there, neglecting the others * * *.' *Williams v Lee Optical Co,*

348 US 483, 489; 75 S Ct 461; 99 L Ed 563 (1955); *Jefferson v Hackney,* 406 US 535; 92 S Ct 1724; 32 L Ed 2d 285 (1972). Particularly with respect to social welfare programs, so long as the line drawn by the State is rationally supportable, the courts will not interpose their judgment as to the appropriate stopping point." *Gedulig v Aiello,* 417 US 484, 495; 94 S Ct 2485; 41 L Ed 2d 256 (1974).

Thus it becomes incumbent to determine whether § 27(i) is rationally related to the stated purpose of the act. We answer in the affirmative.

Section 27(i) represents a discretionary legislative policy judgment that school districts should not be exposed to liability for payment of unemployment benefits during those periods of the year when their employees traditionally do not work. Such a policy is amply justified by the atypical character of school employment and the limited financial resources of school systems. To require that school districts pay their nonprofessional employees benefits for the periods in question would greatly increase their expenditures for unemployment compensation. The interest in maintaining a fiscally sound social welfare program by restricting the assessments which finance the system to reasonable levels has been upheld in recent years as a legitimate basis for the drawing of classifications resulting in the exclusion of various social services, *including* unemployment compensation. See *Gedulig, supra.* In *Ohio Bureau of Employment Services v Hodory,* 431 US 471, 491, 492-493; 97 S Ct 1898; 52 L Ed 2d 513 (1977), the United States Supreme Court, in upholding on equal protection grounds an Ohio law denying unemployment benefits to workers whose nonworking status was due to certain labor conditions, made the following observations:

"In considering the constitutionality of the statute, therefore, the Court must view its consequences, not only for the recipient of benefits, but also for the contributors to the fund and for the fiscal integrity of the fund.

\* \* \*

"The third rationale offered by the State is its interest in protecting the fiscal integrity of its compensation fund. This has been a continuing concern of Congress and the States with regard to unemployment compensation systems. \* \* \* It is clear that protection of the fiscal integrity of the fund is a legitimate concern of the State."

In the case at bar, the Legislature's action was not arbitrary, but was rather designed to safeguard the stability of school district unemployment funds.[6] We are unable to conclude that this classification bears no relationship to the ultimate function of the act of protecting the welfare of the people of Michigan.

Nor, as plaintiff additionally contends, does the legislative exemption of state employed nonprofessional school employees in § 27(i)(2), from the denial provisions of the act, operate as an impermissible differentiation between persons in the same class. Employees of the enumerated institutions are state civil service workers. As before, distinctions premised upon the greater taxing powers and

_____

[6] See MCL 421.2; MSA 17.502 which contains the Employment Security Act's declaration of policy and provides that:

"The systematic accumulation of funds during periods of employment to provide benefits for periods of unemployment by the setting aside of unemployment reserves to be used for the benefit of persons unemployed through no fault of their own, thus maintaining purchasing power and limiting serious social consequences of relief assistance, is for the public good, and the general welfare of the people of this state."

broader financial resources of the state do not result in a denial of equal protection.

Affirmed.

No costs, construction of a statute being involved.