94 Mich. App. 677 (1980)
290 N.W.2d 729
MICHIGAN STATE EMPLOYEES ASSOCIATION
v.
MICHIGAN EMPLOYMENT SECURITY COMMISSION
Docket No. 78-4096.
Michigan Court of Appeals.
Decided January 9, 1980.
Fraser, Trebilcock, Davis & Foster (by Michael E. Cavanaugh and C. Mark Hoover), for plaintiffs.
Frank J. Kelley, Attorney General, Robert A. Derengoski, Solicitor General, and E.J. Setlock, Assistant Attorney General, for defendant.
*680 Before: CYNAR, P.J., and MacKENZIE, and L.W. CORKIN,[*] JJ.
L.W. CORKIN, J.
Plaintiffs-appellants appeal from an order entered September 15, 1978, by Judge James T. Kallman of the Ingham County Circuit Court dismissing plaintiffs' complaint seeking a declaratory judgment as to the constitutionality of § 27(i)(2) of the Michigan Employment Security Act (hereafter Act), MCL 421.27(i)(2); MSA 17.529(i)(2). Plaintiffs-appellants appeal as of right.
Essential facts relevant to the case were stipulated to prior to trial and served as a basis for the trial court's decision. While the stipulation was not, for some unknown reason, made a part of the record on appeal all parties have accepted a summarization of the stipulated facts as set forth in plaintiffs-appellants' brief on appeal, so this Court will adopt such summarization as a statement of essential facts for purposes of this opinion.
The individual plaintiffs are a class of employees described as classified civil service employees of the State of Michigan employed in instructional, research, professional or principal administrative capacities at the State Technical Institute and Rehabilitation Center, the Michigan School for the Blind and the Michigan School for the Deaf. They are normally employed 42 or 46 weeks per year, being laid off during the summer closedown of these institutions.
Plaintiffs sought to have portions of the Act declared unconstitutional as being in violation of the equal protection guarantees of the Fourteenth Amendment to the United States Constitution and *681 art 1, § 2 of the Michigan Constitution of 1963. The statute being challenged, as amended in 1975, denies unemployment benefits to those serving in an instructional, research, professional or principal administrative capacity at state educational facilities during the summer vacation. MCL 421.27(i)(2); MSA 17.529(i)(2). This statute was again amended in 1977 and is now MCL 421.27(i)(1)(a) and (b); MSA 17.529(i)(1)(a) and (b). The 1977 amendment continues to deny to the individual plaintiffs' class and also other employees of state educational facilities the right to collect unemployment benefits between academic years and during vacations.
State civil service employees are covered by § 42(8) of the Act and are entitled to unemployment compensation benefits when specifically qualified. However, the individual plaintiffs, who are employed for less than a 52 week per year period, are denied unemployment compensation benefits for seasonal or other layoffs, regardless of their classification as state civil service employees. Further, it would appear that many other state employees of other departments subject to seasonal layoffs are entitled to unemployment compensation benefits if they are in fact laid off.
In the private sector, employees in such industries as construction and transportation that are subject to seasonal layoffs are entitled to receive compensation benefits in the event of seasonal layoff. Also, MESC information tables reveal that eligibility for unemployment benefits is not determined by industry experiences for annual seasonal layoffs or rate of compensation.
Finally, while it is true that under the act in question plaintiffs are treated similarly to school teachers employed by municipalities, the record *682 shows that there are some differences between the two classes with respect to employment contracts, governing regulations, compensation and fringe benefits.
It is undisputed that plaintiffs having the unemployment characteristics set forth above are denied benefits under § 27(i)(2) of the Act. MCL 421.27(i)(2); MSA 17.529(i)(2).
The statute in effect at the time of this challenge stated:
"Section 42(8). Service performed by an individual in a classified civil service of this state and service performed by an individual for a school district, a community college district, a school or education facility owned or operated by the state other than an institution of higher education * * * is employment subject to this act." MCL 421.42(8); MSA 17.545(8).
"Section 27(i). Benefits based on service in employment described in section 42(8) * * * shall be payable in the same amount, on the same terms, and subject to the same conditions as compensation payable on the basis of other service subject to this act, except that:

* * *
"Benefits based on service for a school district, a community college district, a school or educational facility owned or operated by the state, or a school operated by a political subdivision of the state shall not be paid to an individual for a week of unemployment within a denial period, as defined in this subsection, if the individual normally would not perform services during that period. A requalification period, however, may be served during a denial period. This subdivision shall not deny benefits to an employee of the Michigan school for the blind, the Michigan school for the deaf, or the state technical institute and rehabilitation center, except for those serving in an instructional, research, professional, or principal administrative capacity. For the purpose of this subdivision service in a professional capacity means service in a position which requires a *683 bachelor's degree as an educational requirement." MCL 421.27(i); MSA 17.529(i).
Plaintiffs claim that the statute has the effect of granting unemployment compensation benefits to all civil service employees except them (i.e., instructional/administrative type employees working at the above named state facilities), and that significant differences exist which, based on their civil service status, distinguishes the plaintiffs from all other non-civil service instructional/administrative type persons.
Clearly the application of this statute results in the denial of benefits to a class of civil service employees who would be entitled to the benefits but for their status as instructional type personnel at the particular state facilities and the fact that they are employed for less than 52 weeks per year. Plaintiffs contend that by being denied such benefits their class is a victim of differential treatment not based upon substantial distinctions, but rather is arbitrary, capricious and unreasonable and results in a violation of the constitutional equal protection guarantees.
In dealing with challenges brought under the equal protection clause courts have adopted various "labels" which immediately attach to a subsequent analysis and serve as a standard of review. Not only is the standard chosen by the reviewing court frequently determinative of the ultimate resolution of the issue but, once announced, it is but a short step to apply it to the particular situation under review. Manistee Bank & Trust Co v McGowan, 394 Mich 655, 665-666, 668; 232 NW2d 636 (1975).
The United States Supreme Court, when considering socio-economic legislation, has held that *684 equal protection requires reasonableness in legislative classifications. Tribe, American Constitutional Law, § 16-2, pp 994-996 (1978). Some rationality in the nature of the class singled out is required. Rinaldi v Yeager, 384 US 305, 308-309; 86 S Ct 1497; 16 L Ed 2d 577 (1966). "Rationality" is tested by the classification's ability to serve the purpose intended by the legislative enactment: the courts must reach and determine the question of whether "the classifications drawn in a statute are reasonable in light of its purpose * * *". McLaughlin v Florida, 379 US 184, 191; 85 S Ct 283; 13 L Ed 2d 222 (1964). The Court has ordinarily been willing to uphold any classification based "upon a state of facts that reasonably can be conceived to constitute a distinction, or difference in state policy * * *". Allied Stores of Ohio, Inc v Bowers, 358 US 522, 530; 79 S Ct 437; 3 L Ed 2d 480 (1959). That the legislative solution may appear undesirable, unfair, unjust or inhumane does not of itself empower a court to override the legislature and substitute its own solution. Dandridge v Williams, 397 US 471; 90 S Ct 1153; 25 L Ed 2d 491 (1970). Because "[t]he problems of government are practical ones and may justify, if they do not require, rough accommodations", Metropolis Theatre Co v Chicago, 228 US 61, 69; 33 S Ct 441; 57 L Ed 730 (1913); a demand for "mathematical nicety", Lindsley v Natural Carbonic Gas Co, 220 US 61, 78; 31 S Ct 337; 55 L Ed 369 (1911), is implausible. Instead, the United States Constitution invalidates only that governmental choice which is "clearly wrong, a display of arbitrary power, not an exercise of judgment". Mathews v De Castro, 429 US 181, 185; 97 S Ct 431; 50 L Ed 2d 389 (1976).
Thus, the "any rational basis" test has been applied principally to legislation dealing with social, *685 economic, fiscal and regulatory matters. In applying this standard to cases challenging these types of statutes the Supreme Court has not only entertained a presumption of constitutionality, e.g., McGowan v Maryland, 366 US 420, 425-426; 81 S Ct 1101; 6 L Ed 2d 393 (1961), Madden v Kentucky, 309 US 83, 88; 60 S Ct 406; 84 L Ed 590; 125 ALR 1383 (1940), and placed the burden on the challenging party to show that the law has no reasonable basis, Lindsley v Natural Carbonic Gas Co, supra, but has in fact upheld the legislation in nearly every challenge brought under the equal protection clause. Note: Developments in the Law; Equal Protection, 82 Harv L Rev 1065, 1087 (1969). The standard of "minimal scrutiny" has been applied in recent years to uphold various economic and social legislation. Village of Belle Terre v Boraas, 416 US 1; 94 S Ct 1536; 39 L Ed 2d 797 (1974), United States Dep't of Agriculture v Moreno, 413 US 528; 93 S Ct 2821; 37 L Ed 2d 782 (1973), Jefferson v Hackney, 406 US 535; 94 S Ct 1724; 32 L Ed 2d 285 (1972), Dandridge v Williams, supra, McGowan v Maryland, supra, Massachusetts Board of Retirement v Murgia, 427 US 307; 96 S Ct 2562; 49 L Ed 2d 520 (1976).
In the recent case of New Orleans v Dukes, 472 US 297, 303; 96 S Ct 2513; 49 L Ed 2d 511 (1976), the Court said:
"When local economic regulation is challenged solely as violating the Equal Protection Clause, this Court consistently defers to legislative determinations as to the desirability of particular statutory discriminations. * * * Unless a classification trammels fundamental personal rights or is drawn upon inherently suspect distinctions such as race, religion, or alienage, our decisions presume the constitutionality of the statutory discriminations and require only that the classification challenged be rationally related to a legitimate state *686 interest. States are accorded wide latitude in the regulation of their local economies under their police powers, and rational distinctions may be made with substantially less than mathematical exactitude. * * * In short, the judiciary may not sit as a super-legislature to judge the wisdom or desirability of legislative policy determinations made in areas that neither affect fundamental rights nor proceed along suspect lines * * *." (Citations omitted.)
Thus, the appropriate standard of review to apply in the instant case would be that calling for "minimal scrutiny"; if there is any conceivable rational basis upon which the statutory classification is based denying unemployment compensation benefits to the plaintiffs, then the legislation should be upheld.
As noted above the so-called "rational basis test" resulted in striking down nearly all challenges brought under the equal protection clause. However, there have been cases where a somewhat more stringent standard has been applied and it is this standard that plaintiffs urge this Court to apply. Plaintiffs cite Reed v Reed, 404 US 71, 76; 92 S Ct 251; 30 L Ed 2d 225 (1971), wherein the Court stated that for legislation to be upheld the classification "must be reasonable, not arbitrary, and must rest upon some ground of difference having a fair and substantial relation to the object of the legislation". This standard requires a "realistic", rather than merely a "legitimate", state purpose which is substantially, rather than merely rationally, supported by the classification system set by the legislature.
It is doubtful whether the Reed "intermediate" standard is applicable to the instant case. Reed and subsequent cases adopting the intermediate standard of review use it only in certain limited *687 circumstances, i.e., if there is a significant interference with liberty, a denial of a benefit vital to the individual or the employment of a classification which is deemed to be sensitive (e.g. gender, illegitimacy). Tribe, supra, §§ 16-31, pp 1089-1092, and authorities cited therein. None of the necessary factors are present in this case, so it can be concluded that the U.S. Supreme Court would use minimal scrutiny and apply the rational basis as the appropriate standard of review to the challenged legislation in this case.
Support for this conclusion is found in Ohio Bureau of Employment Services v Hodory, 431 US 471, 489; 97 S Ct 1898; 52 L Ed 2d 513 (1977), where the Court upheld against an equal protection challenge a state scheme denying unemployment compensation to workers whose joblessness resulted from participation in a labor dispute. In the course of the opinion the Court held that since "[t]he statute does not involve any discernible fundamental interest or affect with particularity any protected class * * * the test of constitutionality, therefore, is whether the statute has a rational relation to a legitimate state interest".
"[T]he legislature is not bound to occupy the whole field. It may strike at the [unemployment] evil where it is most felt, * * * or where it is most practicable to deal with it * * *. It may exclude others whose need is less, * * * or whose effective aid is attended by inconvenience which is greater * * *." Carmichael v Southern Coal & Coke Co, 301 US 495, 519-520; 57 S Ct 868; 81 L Ed 1245; 109 ALR 1327 (1937). (Citations omitted.)
The Court noted that the Federal unemployment insurance scheme was not invalid due to its failure to provide benefits to agricultural laborers, domestics, seamen, insurance agents, close relatives of *688 the employer or employees of charities, interstate railroads or governments. See also Geduldig v Aiello, 417 US 484; 94 S Ct 2485; 41 L Ed 2d 256 (1974).
It has been said that the equal protection clause of the Michigan Constitution affords "the same right as the Federal equal protection clause". Fox v Employment Security Comm, 379 Mich 579, 588; 153 NW2d 644 (1967). This proposition is supported by other appellate court decisions. Moore v Spangler, 401 Mich 360; 258 NW2d 34 (1977), Wolodzko v Wayne Circuit Judge, 382 Mich 528, 534; 170 NW2d 9 (1969), Gauthier v Campbell, Wyant & Cannon Foundry Co, 360 Mich 510; 104 NW2d 182 (1960), Naudzius v Lahr, 253 Mich 216, 222; 234 NW 581 (1931), Wahl v Brothers, 60 Mich App 66, 69-70; 230 NW2d 311 (1975). This being so, it must be concluded that the same standard of equal protection as announced by the United States Supreme Court in Hodory, supra, should apply in the instant case. Namely, the test of minimal scrutiny using "any rational basis" as the standard of review.
Plaintiffs contend that in the instant case the intermediate level of review be employed, which would require that the classification in question bear a substantial relation to the purpose of the statute. In support of their contention they cite Manistee Bank, supra, wherein Justice LEVIN speaking for a plurality, wrote:
"In my judgment, at least where the challenged statute carves out a discrete exception to a general rule and the statutory exception is no longer experimental, the substantial-relation-to-the-object test should be applied." 394 Mich 655, 671.
It should be noted that neither of the two particular *689 qualifications specified by Justice LEVIN is present in this case.
First, this case does not involve an exception to the common law, but rather a limitation on a legislative program relating to unemployment. Second, a review of the statute as a whole as well as the particular provision being considered reveals that the statutory exception is frequently revised and amended and should be considered as being still experimental in nature. See Larkin v Bay City Public Schools, 89 Mich App 199; 280 NW2d 483 (1979). Further, decisions subsequent to Manistee Bank, supra, have limited the application of the "substantial relation" test to the rather unique circumstances presented in that case. See Cruz v Chevrolet Grey Iron Division of General Motors Corp, 398 Mich 117; 247 NW2d 764 (1976), and McAvoy v HB Sherman Co, 401 Mich 419; 258 NW2d 414 (1977). In McAvoy, 453-454, the Supreme Court held:
"In the case at bar, it becomes immediately apparent the thrust of the legislation challenged is primarily social and economic. The legislation involved deals with property rights, not fundamental rights. Therefore, the burden is on the appellants to show the classification is arbitrary and does not bear a rational relation to the object of the legislation."
Also see this Court's opinions in Van Slooten v Larsen, 86 Mich App 437, 451; 272 NW2d 675 (1978), McDonald v Chrysler Corp, 68 Mich App 468; 242 NW2d 810 (1976), and Larkin v Bay City Public Schools, supra. In the Larkin opinion this Court declined to adopt the Manistee Bank standard when considering a challenge to a related application of the same section of the Act as being violative of equal protection guarantees, but *690 rather concluded that the instant legislation was to be tested by the rational basis standard so that the classification should be sustained "if any state of facts reasonably can be conceived that would sustain it". Larkin, supra 208.
It seems clear that under both the United States and Michigan Supreme Court standards for review this Court should determine whether or not there is any rational basis for the challenged classification created by § 27(i)(2) of the Act. See also Shavers v Attorney General, 402 Mich 554, 634; 267 NW2d 72 (1978).
It appears to be clear that the purpose of the Act is to provide benefits for persons who become involuntarily unemployed through no fault of their own. I M Dach Underwear Co v Employment Security Comm, 347 Mich 465; 80 NW2d 193 (1956), MCL 421.2; MSA 17.502. It is equally clear that the Legislature did not intend that all persons would be eligible for benefits regardless of their nonworking status. There are certain limits as to who can receive benefits, the maximum number of qualifying weeks to receive benefits, and the maximum amount of benefits receivable. Also there are other clearly delineated exceptions (MCL 421.43; MSA 17.547), and those that are not quite so clear (MCL 421.29[8]; MSA 17.531[8]), indicating a legislative intent not to protect all persons who might be in a position to claim involuntary unemployment. The Legislature chose to adopt a program denying benefits in certain instances and for certain reasons. The fact that the Legislature announced a program with sweeping objectives does not mean that statutory provisions resulting in clear exceptions to those goals cannot exist. Noblit v The Marmon Group, 386 Mich 652; 194 NW2d 324 (1972).
*691 Without a clear statement by the Legislature of its intent in disqualifying plaintiffs from receiving unemployment compensation benefits it is impossible to say with certainty what the intent was. However, it is possible to articulate a significant reason for the statutory classification which denied benefits to the plaintiffs.
In Larkin v Bay City Public Schools, supra, this Court recently upheld a similar scheme against an equal protection challenge focusing on the disqualification of nonprofessional employees servicing local school districts. The Court found that protecting the fiscal integrity of the unemployment fund is a legitimate concern of the state. In citing Geduldig v Aiello, supra, and Ohio Bureau of Employment Services v Hodory, supra, this Court observed:
"The interest in maintaining a fiscally sound social welfare program by restricting the assessments which finance the system to reasonable levels has been upheld in recent years as a legitimate basis for the drawing of classifications resulting in the exclusion of various social services, including unemployment compensation.

* * *
"In the case at bar, the Legislature's action was not arbitrary, but was rather designed to safeguard the stability of school district employment funds. We are unable to conclude that this classification bears no relationship to the ultimate function of the act of protecting the welfare of the people of Michigan." Larkin, supra, 209, 210. (Footnote omitted, emphasis in original.)
The Court in Larkin went on to explain the distinction between nonprofessional employees of local school districts who are disqualified from receiving benefits and those same employees who are covered by the Act if they service the state *692 schools for the blind or the deaf, or the State Technical Institute and Rehabilitation Center. Affirming that classification, this Court observed:
"* * * distinctions premised upon the greater taxing powers and broader financial resources of the state do not result in a denial of equal protection." Larkin, supra, 210-211.
Clearly it would seem that this rationale is supportive of plaintiffs' position since, in the case at bar, the plaintiffs are employees of the State of Michigan which possesses "greater taxing powers and broader financial resources" than the local school districts, thus minimizing the "fiscal integrity" argument. Nonetheless, there is no good reason why the state's concern for the "fiscal integrity" of its own compensation plan is any less legitimate than its concern for the financial burden on local school districts. In fact, both Gedulig v Aiello, supra, and Ohio Bureau of Employment Services v Hodory, supra, involved situations in which the United States Supreme Court upheld the state's interest in maintaining the fiscal integrity of a state disability insurance program and unemployment compensation benefit program, respectively.
The state's failure to treat plaintiffs as it does other civil service employees who qualify for benefits during seasonal layoffs is not arbitrary and irrational. They are treated as are all other employees involved in the instruction and administration of local school and community college educational facilities. It appears that the Legislature has uniformly excluded some seasonal employees from unemployment benefits for the purpose of protecting the fiscal integrity of the compensation program and possibly because the Legislature held *693 the opinion that employees know of the seasonal layoff well in advance (and may consider it an employment benefit) and are not faced with the same "economic crunch" as those who are unpredictably laid off during the year.
The challenged statutory provision meets not only the "rational basis" test, but also bears a "substantial relation" to the purpose of the law.
The trial court's decision is affirmed.
Affirmed.
NOTES
[*] Former circuit judge, sitting on the Court of Appeals by assignment pursuant to Const 1963, art 6, § 23 as amended in 1968.