ROGEL v TAYLOR SCHOOL DISTRICT

Docket Nos. 82111, 82291. Submitted November 19, 1985, at Detroit.
    Decided June 16, 1986.

The Taylor School District, because of financial problems related
    to a series of millage proposal defeats, unilaterally delayed the
    school year starting date for a period of four weeks. Claimants,
    Ann Rogel and other school district employees, applied for
    unemployment benefits with the Michigan Employment Secu-
    rity Commission. The school district eventually continued
    claimants' employment beyond the end of the school year
    specified in the collective bargaining agreement to make up the
    lost work time and to comply with the 180-day school year
    requirement. The claims of teaching and nonteaching employ-
    ees were consolidated by the MESC. A hearing referee deter-
    mined that claimants were entitled to benefits for the four-
    week delay period. The MESC Board of Review affirmed the
    hearing referee's decision. The Wayne Circuit Court, Thomas
    Roumell, J., reversed the board's decision on appeal, ruling that
    claimants were afforded employment for a full school year and
    that unemployment benefits would result in a windfall for
    claimants and unjust enrichment. The teaching and nonteach-
    ing claimants appealed and the Court of Appeals consolidated
    their appeals. *Held:*

    1. When claimants did not start work on the date specified by
    contract as the start of the school year, their period of unem-
    ployment began not in a "period between successive academic
    years," but rather during an academic year. Therefore, the
    "denial period" provision relative to school district employees
    contained in the Michigan Employment Security Act, MCL

REFERENCES
Am Jur 2d, Labor and Labor Relations §§ 1073, 1074, 1764, 1770,
    1790.
Am Jur 2d, Unemployment Compensation § 65.
See the annotations in the ALR3d/4th Quick Index under Labor
    and Labor Relations; Unemployment Compensation.

421.27(i), does not apply in this case to exclude claimants from unemployment benefits.

2. Claimants would not be enriched, unjustly or otherwise, by receiving unemployment benefits.

Reversed and remanded for reinstatement of the MESC decision allowing claimants' unemployment benefits.

1. LABOR RELATIONS — COLLECTIVE BARGAINING — SCHOOLS — SCHOOL DISTRICT EMPLOYEES — STATUTES.

The length of the school year is a mandatory subject of collective bargaining between a school district and the union representing its employees (MCL 423.215; MSA 17.455[15]).

2. UNEMPLOYMENT COMPENSATION — MICHIGAN EMPLOYMENT SECURITY ACT.

The purpose of the Michigan Employment Security Act is to soften the economic burden on those who, through no fault of their own, find themselves unemployed; in light of that purpose, a court must view with caution any construction of the act which would narrow its coverage and deprive persons of their benefits under it (MCL 421.1 *et seq.*; MSA 17.501 *et seq.*).

3. UNEMPLOYMENT COMPENSATION — DENIAL PERIOD — SCHOOL DIS-. TRICT EMPLOYEES — MICHIGAN EMPLOYMENT SECURITY ACT.

Employees of a school district who do not commence work at the beginning of the school year as specified by the terms of the collective bargaining agreement because the school district unilaterally delayed the start of the school year are unemployed and entitled to benefits under the Michigan Employment Security Act for the length of the delay; such period of delay is not a period between two successive academic years wherein the employees would not be entitled to unemployment benefits (MCL 421.27[i]; MSA 17.529[i]).

*Miller, Cohen, Martens & Ice, P.C.* (by *Mark H. Cousens* and *Peter A. Caplan*), for the Taylor Federation of Teachers.

*Levin, Levin, Garvett & Dill* (by *Eli Grier*), for Service Employees International Union, Local 26M, AFL-CIO.

*Frank J. Kelley*, Attorney General, *Louis J. Caruso*, Solicitor General, and *David A. Voges*,

Assistant Attorney General, for the Michigan Employment Security Commission.

*Todd J. Mikesell,* for Taylor School District.

Before: WAHLS, P.J., and R. B. BURNS and M. E. DODGE,* JJ.

M. E. DODGE, J. This case raises an issue of first impression: whether a four-week period in which the claimants did not work at the beginning of the school year constituted a period of unemployment entitling them to unemployment benefits or whether it was a period between two successive academic years for which claimants were not entitled to benefits under the Michigan Employment Security Act (MESA), MCL 421.1 *et seq.;* MSA 17.501 *et seq.* We hold that it was the former and reverse the circuit court's denial of unemployment benefits.

Claimants are approximately six hundred teaching and nonteaching employees of respondent school district. The 1981-1982 school year was scheduled to begin September 1, 1981, under collective bargaining agreements between the school district and the teachers and service personnel. Because of financial problems related to a series of millage defeats, the district unilaterally delayed the school year starting date until September 28, 1981. Claimants applied for unemployment compensation benefits for this four-week period. The school district continued claimants' employment at the contractual end of the school year in June, 1982, to make up the lost work time and to comply with the 180-day school year requirement.

The claims were consolidated by the Michigan Employment Security Commission. The MESC hear-

---

* Circuit judge, sitting on the Court of Appeals by assignment.

ing referee determined that the period of denial of benefits for school employees between school years set forth in MCL 421.27(i); MSA 17.529(i) (§ 27[i]) ended with the ordinary date school should have resumed, the parties' specific contractual date. Accordingly, the referee held that claimants were entitled to benefits for the four-week delay period, and this decision was affirmed by the MESC Board of Review. The circuit court reversed the board's decision on appeal, holding that claimants were afforded employment for a full school year and that unemployment benefits would result in a windfall for claimants and unjust enrichment.

At the time this case arose, § 27(i) provided with respect to the claimants who are teachers:

> (i) Benefits based on service in employment described in section 42(8), (9), and (10) shall be payable in the same amount, on the same terms, and subject to the same conditions as compensation payable on the basis of other service subject to this act, except that:
>
> (1) With respect to service performed in an instructional, research, or principal administrative capacity for an institution of higher education as defined in section 53(2), or for an educational institution other than an institution of higher education as defined in section 53(3), benefits shall not be paid to an individual based on those services for any week of unemployment beginning after December 31, 1977, under either of the following situations:
>
> (a) The week commences during the period between 2 successive academic years or during a similar period between 2 regular terms, whether or not successive, or during a period of paid sabbatical leave provided for in the individual's contract, to an individual if the individual performs the service in the first of the academic years or terms and if there is a contract or a reasonable assurance that the individual will perform service

in an instructional, research, or principal administrative capacity for an educational institution in the second of the academic years or terms, whether or not the terms are successive.

(b) The week commences during an established and customary vacation period of holiday recess if the individual performs the service in the period immediately before the vacation period or holiday recess, and there is a reasonable assurance that the individual will perform the service in the period immediately following the vacation or holiday recess.

Similarly, with respect to the nonteaching claimants, § 27(i)(2) provided:

(2) With respect to service performed in other than an instructional, research, or principal administrative capacity for an educational institution other than an institution of higher education as defined in section 53(3), benefits shall not be paid based on those services for any week of unemployment beginning after December 31, 1977: (a) which commences during the period between 2 successive academic years or terms to any individual if that individual performs the service in the first of the academic years or terms and if there is a reasonable assurance that the individual will perform the service in the second of the academic years or terms; or (b) which commences during an established and customary vacation period or holiday recess if the individual performs the service in the period immediately before the vacation period or holiday recess, and there is a reasonable assurance that the individual will perform the service in the period immediately following the vacation or holiday recess.

Section 27(i)(4) defined "academic year":

(4) For purposes of this subsection, "academic year" means that period, as defined by the educa-

tional institution, when classes are in session for that length of time required for students to receive sufficient instruction or earn sufficient credit to complete academic requirements for a particular grade level or to complete instruction in a noncredit course.

The school calendar is a mandatory subject of collective bargaining under § 15 of the public employees relations act, MCL 423.215; MSA 17.455(15). Under the school district's collective bargaining agreement, the 1981-1982 school year was scheduled to begin on September 1, 1981. Because of financial difficulties, the school district unilaterally moved the starting date to September 28, 1981.

Seizing on the phrase "as defined by the educational institution," the school district now argues that the 1981-1982 school year should be defined under § 27(i)(4) as beginning on September 28. Acceptance of that argument would mean that a school district could unilaterally change the beginning and ending dates of the school year at any time without its employees being able to collect unemployment benefits. Such an interpretation would defeat the purpose of the MESA, which was intended to soften the economic burden on those who, through no fault of their own, find themselves unemployed. See *General Motors Corp v Erves (On Rehearing)*, 399 Mich 241, 252; 249 NW2d 41 (1976); MCL 421.2; MSA 17.502. The school year was defined by contract as beginning September 1. When claimants did not start work on September 1, their period of unemployment began not in a "period between successive academic years," but rather during an academic year. The denial period provision did not apply.

Section 27(i) generally protects school employees from the hardships of unemployment to the same

extent as other employees. School employees, however, are not entitled to unemployment benefits for those periods when they traditionally do not work. These exceptions for school employees have been upheld by this Court. *Larkin v Bay City Public Schools,* 89 Mich App 199; 280 NW2d 483 (1979), lv den 406 Mich 979 (1979). This Court has suggested that the Legislature's exclusion resulted in part because of an opinion that school employees "know of the seasonal layoff well in advance (and may consider it an employment benefit) and are not faced with the same 'economic crunch' as those who are unpredictably laid off during the year." *Michigan State Employees Ass'n v MESC,* 94 Mich App 677, 692-693; 290 NW2d 729 (1980), lv den 408 Mich 952 (1980).

By analogous reasoning, claimants here had every reasonable expectation of returning to work on September 1, 1981. Whatever planning they had done to offset the "economic crunch" of the traditional period was undoubtedly thrown off by an extra four weeks of unemployment.

In light of the purposes behind the MESA, it is entitled to a liberal interpretation. *Godsol v Unemployment Compensation Comm,* 302 Mich 652, 665; 5 NW2d 519 (1942). This Court has cautioned against constructions of the act which "narrow its coverage and deprive persons entitled thereto of the benefits of the act." *Fifth Dist Republican Committee v MESC,* 19 Mich App 449, 452-453; 172 NW2d 825 (1969), lv den 383 Mich 760, cert den 400 US 866; 91 S Ct 104; 27 L Ed 2d 105 (1970). Disqualification provisions should be narrowly construed in favor of those involuntarily unemployed through no fault of their own. *Chrysler Corp v DeVine,* 92 Mich App 555, 558; 285 NW2d 373 (1979).

With these principles in mind, we are unable to agree with the circuit court that claimants' unem-

ployment benefits would constitute a windfall and unjust enrichment merely because they eventually received their full salaries for the school year when the school year was lengthened. This argument ignores the purpose of the act, i.e, to alleviate the economic burden of unemployment. The fact that a presently unemployed worker may eventually be made whole does little to soften the immediate economic burden caused by a month of unexpected unemployment. Moreover, for any claimants who ordinarily sought other employment during the summer, lengthening the school year deprived them of one month in which to work the next summer. Such claimants would obviously not be enriched, unjustly or otherwise.

As we have noted, claimants expected to begin work on September 1. Had they started that day and worked a week, a day, or even an hour, and then been laid off, they would clearly have been entitled to unemployment compensation benefits even if that time was later made up. The Legislature was apparently less concerned with the possibility of unjust enrichment in such a situation than with the immediate economic burden of unemployed school employees. We see no difference when a school district's unilateral action delays the bargained-for and scheduled beginning of the school year.

The decision of the MESC fits a liberal interpretation of § 27(i).[1] We reverse the circuit court's decision and order reinstatement of the MESC decision

---

[1] Although we have located no authority dealing directly with this issue, we believe our reasoning is also supported by a federal case cited in the nonteaching appellants' brief, *Chicago Teachers Union v Johnson,* 639 F2d 353 (CA 7, 1980), which involved unemployment benefits under the federal Special Unemployment Assistance Program. Due to lack of funds, employment of public school teachers in Chicago was terminated on June 7, 1976, three weeks before the scheduled school closing. The Seventh Circuit determined that the

allowing claimants' unemployment benefits.
Reversed.

teachers were eligible for unemployment benefits and that the three-week period was not a period between two successive academic years within the meaning of 26 USC 3304, containing a denial period similar to that in the instant case. The court reasoned that the denial period "was intended to be that period characteristic to the educational profession and within the expectation of the teachers." 639 F2d 357.