GORMLEY v GENERAL MOTORS CORPORATION

Docket No. 63790. Submitted December 21, 1982, at Detroit.—Decided
May 17, 1983.

Charles M. Gormley was laid off from his employment at General
Motors Corporation on July 17, 1980. Gormley applied for
unemployment benefits on July 22, 1980. On August 6, 1980,
the Michigan Employment Security Commission granted Gorm-
ley unemployment compensation benefits; however, the commis-
sion reduced his weekly benefit rate by $103 to reflect the $441
per month federal military pension which Gormley was receiv-
ing. Gormley sought a redetermination before the commission,
which reaffirmed the earlier determination. Gormley appealed
the redetermination to a referee, who affirmed the commis-
sion's determination. Gormley appealed the referee's decision to
the board of review. By the time that the board of review heard
the case, Congress had amended the statute upon which the
commission had relied. Prior to its amendment, the statute
required the states to offset any pension benefits being received
by an unemployed worker against the otherwise payable unem-
ployment benefits, while the amendment limited such offset to
pension benefits being received from the base period employer.
The board of review reversed the decision of the referee and
ordered payment of benefits at the full rate. The commission
sought review of the board of review's decision in Washtenaw
Circuit Court. Ross W. Campbell, J., affirmed the decision of the
board of review. The commission appeals. Held:

The federal statute prior to its 1980 amendment and the
corresponding Michigan statutory provision clearly required
that the unemployment benefits be offset by the federal mili-
tary pension payments. The 1980 amendment, not being a
remedial statute and containing no specific indication that it
should be applied retrospectively, did not take effect until

REFERENCES FOR POINTS IN HEADNOTES
[1, 2] 76 Am Jur 2d, Unemployment Compensation § 94.
[3] 76 Am Jur 2d, Unemployment Compensation § 43.
[4] 73 Am Jur 2d, Statutes §§ 349-351.
[5] 73 Am Jur 2d, Statutes §§ 145, 146.
[6] 73 Am Jur 2d, Statutes § 354.

November 1, 1980. Accordingly, the unemployment benefits paid to Gormley for the benefit periods prior to November 1, 1980, were properly reduced by the amounts he received in federal military pension benefits for those periods.

Reversed.

1. UNEMPLOYMENT COMPENSATION — APPEAL — SCOPE OF REVIEW.

The Court of Appeals may review questions of law or fact in an appeal from a decision of the Michigan Employment Security Commission Board of Review but can reverse only if the order or decision is contrary to law or is unsupported by competent, material and substantial evidence on the record (Const 1963, art 6, § 28; MCL 421.38; MSA 17.540).

2. UNEMPLOYMENT COMPENSATION — APPEAL — MATTERS OF LAW.

Questions presented to the Court of Appeals on appeal from a decision of the Michigan Employment Security Commission are to be treated as matters of law where there is no dispute as to the underlying facts.

3. UNEMPLOYMENT COMPENSATION — PENSION BENEFITS.

Unemployment compensation benefits for benefit periods between March 31, 1980, and November 1, 1980, are subject to the provisions of the 1976 amendment of the Federal Unemployment Tax Act relative to reduction of benefits by reason of federal pension benefits; accordingly, for benefit weeks during that period the Michigan Employment Security Commission properly reduced dollar for dollar the unemployment benefits otherwise payable by the amount received by a claimant as federal military pension benefits (90 Stat 2667 [1976]; 26 USC 3304[a][15]; MCL 421[f][5]; MSA 17.529[f][5]).

4. STATUTES — PROSPECTIVE APPLICATION.

Statutes are generally deemed to be prospective in their operation except where a contrary intent is expressed in the statute itself.

5. STATUTES — JUDICIAL CONSTRUCTION — LEGISLATIVE INTENT.

The cardinal rule of statutory construction is to ascertain and give effect to the intention of the Legislature; where the language of the statute is unambiguous, the intent must be determined accordingly.

6. STATUTES — REMEDIAL STATUTES — RETROSPECTIVE APPLICATION.

Remedial statutes may be applied retrospectively; a remedial statute is a statute with provisions relating to remedies or modes of procedure which do not create a new right or take

away a vested right but only operate in furtherance of a remedy or confirmation of rights already existing.

Legal Services of Southeastern Michigan (by *Paul D. Reingold),* for Charles M. Gormley.

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, and *James A. Burns,* Assistant Attorney General, for the Michigan Employment Security Commission.

Before: V. J. BRENNAN, P.J., and M. J. KELLY and J. M. GRAVES, JR.,* JJ.

J. M. GRAVES, JR., J. The Michigan Employment Security Commission (MESC) appeals as a matter of right from an opinion and order entered by the Washtenaw County Circuit Court affirming the decision of the Michigan Employment Security Board of Review. Charles M. Gormley served in the United States Army for 20 years. Gormley began receiving a military pension in an approximate amount of $441 to $450 per month in January, 1978. From August 13, 1978, to July 17, 1980, Gormley worked for General Motors Corporation; however, he was laid off due to lack of work on July 17, 1980. After Gormley applied for unemployment compensation benefits on July 22, 1980, the MESC issued a determination on August 6, 1980, granting Gormley unemployment compensation benefits. However, because of Gormley's military pension, the MESC reduced his weekly benefit rate by $103, so that his weekly benefits were $25 per week. The reduction was made pursuant to the provisions of 26 USC 3304(a)(15) and MCL 421.27(f)(5); MSA 17.529(f)(5).

Gormley challenged the determination, but the

* Circuit judge, sitting on the Court of Appeals by assignment.

award of reduced unemployment compensation benefits was affirmed by a redetermination issued on August 19, 1980. Gormley filed a claim of appeal, and the referee, in affirming the commission's determination, noted that Gormley's unemployment compensation benefits had to be reduced because of the existence of his military pension.

On October 20, 1980, Gormley appealed the referee's decision to the Michigan Employment Security Board of Review. By the time the appeal was heard by the board of review, Congress had changed the pension offset provision of the Federal Unemployment Tax Act through enactment of Pub L 96-364, § 414(a); 94 Stat 1208; 26 USC 3304(a)(15). Under the new provision, a pension would offset employment benefits only if the pension came from a "base period employer". In an opinion dated November 10, 1981, the board of review applied the newly enacted pension offset rule and held that because plaintiff's pension did not come from a base period employer, his employment compensation benefit rate should not have been reduced by $103 per week. The board of review reversed the decision of the referee and ordered payment of benefits at the full rate. The MESC sought review of the decision of the board of review in Washtenaw County Circuit Court, which affirmed the decision of the board.

The MESC argues that the circuit court committed reversible error by affirming the decision of the board of review because, at the time Gormley was laid off, 26 USC 3304(a)(15) mandated that Gormley's unemployment benefits be reduced since he was collecting a governmental pension. We agree.

On appeal from decisions of the board of review, this Court may review questions of law or fact,

Const 1963, art 6, § 28; MCL 421.38; MSA 17.540, but it can reverse only if the order or decision is contrary to law or is unsupported by competent, material and substantial evidence on the record. If, as in the case at bar, there is no dispute as to underlying facts, questions presented on appeal are to be treated as matters of law. *Chrysler Corp v Sellers,* 105 Mich App 715, 720; 307 NW2d 708 (1981).

In 1976, Congress passed an amendment to the Federal Unemployment Tax Act (FUTA), 26 USC 3301 *et seq.* The amendment, codified as 26 USC 3304(a)(15), required participating states for the first time to treat specific forms of "wage replacement" income as disqualifying income. The amendment conditioned federal certification of a state's unemployment compensation laws upon the state's adoption of a provision that:

"(15) the amount of compensation payable to an individual for any week which begins after March 31, 1980, and which begins in a period with respect to which such individual is receiving a governmental or other pension, retirement or retired pay, annuity, or any other similar periodic payment which is based on the previous work of such individual shall be reduced (but not below zero) by an amount equal to the amount of such pension, retirement or retired pay, annuity, or other payment, which is reasonably attributable to such week;" Pub L 94-566, § 314(a); 90 Stat 2667 (1976), as amended by Pub L 95-19, § 302(e); 91 Stat 44 (1977).

The practical effect of the amendment is to create, on a uniform basis throughout the United States, a dollar-for-dollar reduction of unemployment insurance benefits by income received from the designated wage replacement sources. In order to conform to the amendment, Michigan enacted MCL 421.27(f)(5); MSA 17.529(f)(5), which provided:

"(5) Notwithstanding any other provision of this subsection, for any week which begins after March 31, 1980, and with respect to which an individual is receiving a governmental or other pension and claiming unemployment compensation, the weekly benefit amount payable to the individual for those weeks shall be reduced, but not below zero, by the entire prorated weekly amount of any governmental or other pension, retirement or retired pay, annuity, or any other similar payment which is based on any previous work of the individual. This reduction shall be made only if it is required as a condition for full tax credit against the tax imposed by the federal unemployment tax act, 26 USC 3301 to 3311."

On September 26, 1980, Congress re-amended 26 USC 3304(a)(15) to include the following additional language:

"(15) the amount of compensation payable to an individual for any week which begins after March 31, 1980, and which begins in a period with respect to which such individual is receiving a governmental or other pension, retirement or retired pay, annuity, or any other similar periodic payment which is based on the previous work of such individual shall be reduced (but not below zero) by an amount equal to the amount of such pension, retirement or retired pay, annuity, or other payment, which is reasonably attributable to such week except that—

"(A) the requirements of this paragraph shall apply to any pension, retirement or retired pay, annuity, or other similar periodic payment only if—

"(i) such pension, retirement or retired pay, annuity, or similar payment is under a plan maintained (or contributed to) by a base period employer or chargeable employer (as determined under applicable law), and

"(ii) in the case of such a payment not made under the Social Security Act or the Railroad Retirement Act of 1974 (or the corresponding provisions of prior law), services performed for such employer by the individual after the beginning of the base period (or remuneration

for such services) affect eligibility for, or increase the amount of, such pension, retirement or retired pay, annuity, or similar payment, and

"(B) the State law may provide for limitations on the amount of any such a reduction to take into account contributions made by the individual for the pension, retirement or retired pay, annuity, or other similar periodic payment." Pub L 96-364, § 414(a); 94 Stat 1208 (1980).

The additional language alters the original amendment in two key repects. First, it limits the setoff requirements to those situations in which a single employer would otherwise be required to finance not only a claimant's unemployment insurance benefits but also his pension benefits during the same base period. Second, it permits states to reduce the setoff by an amount representing the claimant's own contributions to a pension plan or other form of wage replacement income. The newly enacted § 3304(a)(15) was made applicable only to recertifications by the Secretary of Labor for 1981 and subsequent years. Pub L 96-364, § 414(b); 94 Stat 1310 (1980). Indeed, the re-amendment contained the following specific language:

"(b) EFFECTIVE DATE. The amendment made by subsection (a) shall apply to certifications of states for 1981 and subsequent years."

FUTA provides that the tax year of a state runs from November 1 to the following October 31. See 26 USC 3302(a)(1). Thus, the Congress clearly intended that the September 26, 1980, amendment was to become effective on November 1, 1980, and thereafter.

The original determination by MESC that Gormley's unemployment benefits must be reduced by the amount of his governmental pension was cor-

rect in light of the applicable federal and state statutes in force at the time of the determination. We hold that Gormley's unemployment compensation benefits from August, 1980, to October 31, 1980, must be reduced by the amount of the governmental pension plaintiff received during that time period.

We agree with Gormley's contention that he would be entitled to receive full unemployment benefits for that time period were the Court to apply the September 26, 1980, amendment retroactively. However, his arguments for retroactive application of the amendment are not persuasive. It is a general rule in Michigan, as well as in other jurisdictions, that all statutes are prospective in their operation except in such cases as the contrary clearly appears from the context of the statute itself. *In re Davis' Estate,* 330 Mich 647, 651; 48 NW2d 151 (1951). Nothing in the language or context of the 1980 amendment suggests a congressional intent that the amendment was to apply retroactively. Indeed, the specific language of the amendment reveals a congressional intent that the amendment have prospective application beginning November 1, 1980. It is not our function to fathom out hidden manifestations of legislative intent when the language of the statute clearly reveals that legislative intent. "The cardinal rule of statutory construction is to ascertain and give effect to the intention of the [L]egislature. If the language of a statutory provision is unambiguous, the intent must be determined accordingly." *Melia v Employment Security Comm,* 346 Mich 544, 562; 78 NW2d 273 (1956). See also *Avon Twp v Boundary Comm,* 96 Mich App 736, 743; 293 NW2d 691 (1980), and *City of Lansing v Lansing Twp,* 356 Mich 641, 648; 97 NW2d 804 (1976).

Gormley contends that the September 26, 1980, amendment to FUTA was remedial in nature; therefore, the amendment should apply retroactively. A remedial statute may be applied retrospectively. *Hansen-Snyder Co v General Motors Corp,* 371 Mich 480, 484-485; 124 NW2d 286 (1963). However, the September 26, 1980, amendment to FUTA is not a remedial statute. A remedial statute is related to remedies or modes of procedure which do not create new or take away vested rights, but only operate in furtherance of a remedy or confirmation of rights already existing. *Kalamazoo City Education Ass'n v Kalamazoo Public Schools,* 406 Mich 579, 601; 281 NW2d 454 (1979). Under the original version of 26 USC 3304(a)(15) effective after March 31, 1980, Gormley was barred from receiving full unemployment compensation benefits. However, the September 26, 1980, amendment to 26 USC 3304(a)(15) allows Gormley to receive full unemployment compensation benefits beginning November 1, 1980. Thus, the latter amendment creates a new right in Gormley and others in his position and cannot be considered as being a remedial statute.

Reversed.