PAYNES v DETROIT BOARD OF EDUCATION

WHALEN v DETROIT BOARD OF EDUCATION

Docket Nos. 80571, 81053. Submitted May 16, 1985, at Detroit.—
Decided April 7, 1986.

Linda L. Paynes contracted to teach for the Detroit School
District in 1979. Except for a brief lay-off period in 1980, she
remained a full-time contract teacher until June of 1982, when
her employment was terminated due to the depressed economic
climate. She received notice of termination on April 20, 1982,
along with an application for a position as a regular emergency
substitute (RES) teacher. On May 19, 1982, Paynes signed the
RES application which was entitled: Agreement for Regular
Emergency Substitute Service. Her last day as a contract
teacher was June 30, 1982. An RES teacher is guaranteed
employment for every day that the schools are open, but not
always at the same school. The benefits given to an RES
teacher also differ from those of a contract teacher. A contract
teacher receives both medical and dental benefits for him- or
herself and dependents, while an RES teacher must choose
between medical and dental coverage, which applies only to the
employee. An RES teacher is also not entitled to sick leave,
leaves of absence or paid holidays. An RES position is for an
indefinite period of time, and there are no assurances against
layoffs. As an RES teacher, Paynes would have had a decrease
in wages from $109 per day to $63 per day. On August 4, 1982,
Paynes filed an application for unemployment benefits. The
Employment Security Commission originally determined that
she became unemployed due to summer recess with job assur-
ance for September of 1982. The MESC denied her benefits for
the summer of 1982, the "school denial period", pursuant to the
statutory provision which denies teachers unemploment bene-
fits during the summer school recess. Paynes was scheduled to
return to work as an RES teacher on September 11, 1982.

REFERENCES

Am Jur 2d, Public Officers and Employees §§ 11, 14.

Am Jur 2d, Schools § 128.

See the annotations in the ALR3d/4th Quick Index under School-
teachers; Unemployment Compensation.

However, due to an impending strike, all RES teachers were laid off in early September. Paynes attempted to resign from her RES position on September 13, 1982. She was informed by the Detroit Public Schools unemployment compensation representative that she did not need to do so to receive unemployment benefits because, upon her layoff in September, reasonable assurance of employment would cease to exist and the school denial period would end. Also, according to the representative, a teacher who had signed the application or agreement would only have to call the school system to strike his or her name off the RES list in order to rescind the application or agreement. The MESC redetermined that Paynes was eligible for unemployment benefits for the summer months because she was not given reasonable assurance of work in the same or a similar capacity. The board of education protested the redetermination. After a hearing before a referee, a written decision was issued affirming the redetermination. The referee's decision was summarily affirmed by the MESC Board of Review. The board appealed to the Wayne Circuit Court. The Employment Security Commission was joined as a party for purposes of judicial review. The court affirmed, Helene Nita White, J. The board appealed.

Valerie Ann Whalen was originally hired by the Detroit School District Board of Education as an emergency substitute teacher and the following day was reclassified as an RES teacher. In 1980, she became a contract teacher. In February of 1981, she took a leave of absence due to illness, which leave was to expire on July 1, 1981. On April 29, 1981, she received a layoff notice, effective June 30, 1981, due to economic necessity. The notice of termination informed her that she could apply for a position as an RES teacher the following school year. The letter also stated that, pursuant to the teachers' collective bargaining agreement, "teachers who are laid off may, upon application, be assigned as regular Emergency Subsitute Teachers (RES)". She signed the enclosed RES application, which, as in claimant Paynes's case, was entitled "Agreement for Regular Substitute Service", on June 5, 1981. Whalen understood the form she signed to be an application for work. Her decrease in salary as an RES teacher would be from approximately $80 per day to $60 per day. Whalen filed an application for unemployment benefits on August 14, 1981. She later received a letter from the board of education informing her to report to work as an RES teacher the following day. However, at that point she declined the position, preferring to wait for a contract position to become available. The MESC determined that Whalen was eligible for benefits during the summer recess since she did not have

reasonable assurance of full-time permanent employment to the 1981-1982 school year as a contract teacher. In a redetermination order, the MESC affirmed her eligibility for summer recess benefits. At the board of education's request, a hearing was held before an MESC referee on January 5, 1982. The referee's written decision determined that Whalen did receive *reasonable assurance of employment for the 1981-1982 school year* and refused to consider the suitability or terms of the employment in its determination. The referee's decision was affirmed by the MESC Board of Review. Whalen appealed to the Wayne Circuit Court. The MESC was made a party for purposes of appellate review. After a hearing on August 29, 1984, the circuit court, Michael J. Connor, J., reversed the order of the MESC Board of Review and reinstated the initial determination that Whalen was eligible for unemployment benefits, holding that Whalen had not received reasonable assurance of employment during the 1981-1982 school year and that suitability of the proffered work is a factor to consider when determining if the claimant is entitled to summer recess unemployment benefits. The board of education appealed. On appeal, the MESC reversed its position in this case and urged the Court of Appeals to affirm the decision of the circuit court. The cases were consolidated by the Court of Appeals. *Held:*

The economic terms and conditions of the proffered employment, such as hours and wages, are appropriate factors for the MESC to consider when determining whether a teacher who has been given an offer or reasonable assurance of reemployment in an instructional, research, or principal administrative capacity for the following academic year is eligible to receive unemployment benefits between school terms in accordance with the Employment Security Act.

Affirmed as to Paynes's claim and reversed and remanded with instructions as to Whalen's claim. The Court of Appeals retained jurisdiction as to Whalen's claim.

1. UNEMPLOYMENT COMPENSATION — SCHOOLS — SUMMER RECESSES — REASONABLE ASSURANCE OF REEMPLOYMENT — EMPLOYMENT SECURITY ACT.

The economic terms and conditions of the proffered employment, such as hours and wages, are appropriate factors for the MESC to consider when determining whether a teacher who has been given an offer or reasonable assurance of reemployment in an instructional, research, or principal administrative capacity for the following academic year is eligible to receive employment benefits between school terms in accordance with the Employment Security Act (MCL 421.27[i]; MSA 17.529[i]).

2. UNEMPLOYMENT COMPENSATION — SCHOOLS — SUMMER RECESSES —
EMPLOYMENT SECURITY ACT.

The Employment Security Act denies employment benefits to
teachers performing services in an instructional, research or
principal administrative capacity in the first academic year if
there exists a contract or reasonable assurance that the individ-
ual will perform service in an instructional, research, or princi-
pal administrative capacity for the successive second academic
year (MCL 421.27[i]; MSA 17.529[i]).

3. UNEMPLOYMENT COMPENSATION — SCHOOLS — SUMMER RECESSES —
EMPLOYMENT SECURITY ACT.

To be lawfully denied unemployment benefits under the school
denial period provision of the Employment Security Act (1) a
teacher must be reasonably assured of reemployment the fol-
lowing year in an instructional, research, or principal adminis-
trative capacity, and (2) the economic terms and conditions of
the employment for the following year must be reasonably
similar to those in the preceding year (MCL 421.27[i][1][a]; MSA
17.529[i][1][a]).

*Mark H. Cousens* and *Peter A. Caplin,* for Linda
L. Paynes and Valerie A. Whalen.

*Lynne M. Metty,* for the Detroit Board of Educa-
tion.

*Frank J. Kelley,* Attorney General, *Louis J.
Caruso,* Solicitor General, and *Dennis J. Grifka*
and *Jack Blumenkopf,* Assistants Attorney Gen-
eral, for the Employment Security Commission.

Before: BEASLEY, P.J., and GRIBBS and R. R.
LAMB,* JJ.

GRIBBS, J. The Detroit Board of Education ap-
peals from the Wayne County Circuit Court order
affirming the Michigan Employment Security Com-
mission Board of Review's decision granting claim-
ant teacher Linda L. Paynes unemployment bene-
fits for the summer school recess period. The De-

---

* Circuit judge, sitting on the Court of Appeals by assignment.

troit School District also appeals from the Wayne County Circuit Court order reversing the MESC Board of Review's decision which denied claimant teacher Valerie Ann Whalen unemployment benefits for the summer recess pursuant to MCL 421.27(i); MSA 17.529(i).[1] MCL 421.27(i); MSA 17.529(i) denies employees of state educational facilities unemployment benefits between academic years during school recess periods, referred to as the "school denial period", when they have reasonable assurance of reemployment the following academic year. The statute provided in pertinent part:

"(1) With respect to service performed in an instructional, research, or principal administrative capacity for * * * an educational institution other than an institution of higher education as defined by section 53(3) [applicable], *benefits shall not be paid to an individual* based on those services for any week or unemployment * * * under * * * the following [situation]:

"(a) The week commences during the period between 2 successive academic years, * * * the individual performs the service in the first of the academic years * * * and *if there is* a contract or *a reasonable assurance that the individual will perform service in an instructional, research, or principal administrative capacity for an educational institution in the second of the academic years* * * *." (Emphasis added.)

These cases were consolidated on appeal on the parties' motions. We affirm in part and remand.

### BACKGROUND

*Claimant Paynes*

Linda L. Paynes contracted to teach for the Detroit Board of Education in 1979. Except for a

---

[1] The MESC has reversed its original position in the circuit court in the Whalen case and supports the granting of unemployment benefits to claimant teachers and affirmance of both circuit court orders.

brief layoff period in 1980, she remained a full-time contract teacher until June of 1982, when her employment was terminated due to the depressed economic climate. She received notice of termination on April 20, 1982, along with an application for a position as a regular emergency substitute (RES) teacher. Paynes signed the RES application which was entitled "Agreement for Regular Emergency Substitute Service", on May 19, 1982. Her last day as a contract teacher was June 30, 1982.

An RES teacher is guaranteed employment for every day that the schools are open, but not always at the same school. The benefits given to an RES teacher also differ from those of a contract teacher. A contract teacher receives both medical and dental benefits for him- or herself and dependents, while an RES teacher must choose between medical and dental coverage, which applies only to the employee. An RES teacher is also not entitled to sick leave, leaves of absence or paid holidays. The RES position is for an indefinite period of time, and there are no assurances against layoffs. As an RES teacher, Paynes would have had a decrease in wages from $109 per day to $63 per day.

On August 4, 1982, Paynes filed an application for unemployment benefits. The MESC originally determined that she became unemployed due to summer recess with job assurance for September of 1982. Accordingly, on September 2, 1982, the MESC denied her benefits for the summer of 1982, the "school denial period", pursuant to MCL 421.27(i); MSA 17.529(i), which denies teachers unemployment benefits during the summer school recess.

Paynes was scheduled to return to work as an RES teacher on September 11, 1982. However, due to an impending strike, all RES teachers were laid

off in early September. Paynes attempted to "resign" from her RES position on September 13, 1982. She was informed by the Detroit Public Schools unemployment compensation representative that she did not need to do so to receive unemployment benefits because, upon her layoff in September, reasonable assurance of employment would cease to exist and the school denial period would end. Also, according to the representative, a teacher who had signed the application or agreement would only have to call the school system to strike his or her name off the RES list in order to rescind the application or agreement.

On September 15, 1982, the MESC redetermined that Paynes was eligible for unemployment benefits for the summer months because she was not given reasonable assurance of work in the same or a similar capacity. The board of education protested the redetermination. After a hearing before a referee, a written decision was issued on November 3, 1982, affirming the redetermination. The referee's decision was summarily affirmed by the MESC Board of Review on November 17, 1983, and summarily affirmed by the Wayne County Circuit Court on August 30, 1984. The board of education appeals as of right. Pursuant to MCL 421.38(3); MSA 17.540(3), the MESC has been made a party for purposes of judicial review.

*Claimant Whalen*

Valerie Ann Whalen was originally hired on November 1, 1979, by the Detroit School District Board of Education as an emergency substitute teacher, but the following day was reclassified as an RES teacher. On January 21, 1980, she became a contract teacher. In February of 1981, she took a leave of absence due to illness, which leave was to expire on July 1, 1981. On April 29, 1981, she

received a layoff notice, effective June 30, 1981, due to economic necessity. The notice of termination informed her that she could apply for a position as an RES teacher the following school year. The letter also stated that, pursuant to the teachers' collective bargaining agreement, "teachers who are laid off *may, upon application,* be assigned as regular Emergency Substitute Teachers (RES)". (Emphasis added.) She signed the enclosed RES application, which, as in claimant Paynes's case, was entitled "Agreement for Regular Emergency Substitute Service", on June 5, 1981. According to Whalen, she understood the form she signed to be an application for work. Her decrease in salary as an RES teacher would be from approximately $80 per day to $60 per day.

Whalen filed an application for unemployment benefits on August 14, 1981. On September 8, 1981, she received a letter from the board of education informing her to report to work as an RES teacher the following day. However, at that point she declined the position, preferring to wait for a contract position to become available. On October 8, 1981, the MESC determined that Whalen was eligible for benefits during the summer recess since she did not have reasonable assurance of full-time permanent employment in the 1981-1982 school year as a contract teacher. In a redetermination order dated November 12, 1981, the MESC affirmed her eligibility for summer recess benefits. At the board of education's request, a hearing was held before an MESC referee on January 5, 1982. The referee's written decision of January 13, 1982, determined that Whalen did receive reasonable assurance of employment for the 1981-1982 school year and refused to consider the suitability or terms of the employment in its determination. The referee's decision was affirmed

by the MESC Board of Review on October 7, 1982, and rehearing was denied on January 11, 1983.

Whalen appealed to the Wayne County Circuit Court. After a hearing on August 29, 1984, the circuit court reversed the order of the MESC Board of Review, and reinstated the initial determination that Whalen was eligible for unemployment benefits, holding that Whalen did not receive reasonable assurance of employment during the 1981-1982 school year and that suitability of the proferred work is a factor. to consider when determining if the claimant is entitled to summer recess unemployment benefits. An order to that effect was entered on September 24, 1984. The board of education appeals as of right. Pursuant to MCL 421.38(3); MSA 17.548(3), the MESC has been made a party for purposes of appellate review. On appeal, the MESC has reversed its position in this case and urges this Court to affirm the decision of the circuit court.

## DISCUSSION

"On appeal from decisions of the board of review, this Court may review questions of law or fact, Const 1963, art 6, § 28; MCL 421.38; MSA 17.540, but it can reverse only if the order or decision is contrary to law or is unsupported by competent, material and substantial evidence on the record. If, as in the case at bar, there is no dispute as to underlying facts, questions presented on appeal are to be treated as matters of law. *Chrysler Corp v Sellers*, 105 Mich App 715, 720; 307 NW2d 708 (1981)." *Gormley v General Motors Corp*, 125 Mich App 781, 784-785; 336 NW2d 873 (1983).

The common issue in both cases at bar is whether the MESC, in determining if unemployment benefits should be denied to a teacher for the summer recess period pursuant to the school denial period provision, MCL 421.27(i); MSA

17.529(i), can consider the terms and suitability of the work offered for the second academic year. We hold that the economic terms and conditions of the proffered employment, such as hours and wages, are appropriate factors for the MESC to consider when determining whether a teacher who has been given an offer or reasonable assurance of reemployment in an instructional, research, or principal administrative capacity for the following academic year is eligible to receive unemployment benefits between school terms.

The purpose of the Michigan Employment Security Act, MCL 421.1 *et seq.;* MSA 17.501 *et seq.,* is to safeguard the general welfare through the dispensation of benefits intended to ameliorate the disastrous effects of involuntary unemployment. *Larkin v Bay City Public Schools,* 89 Mich App 199; 280 NW2d 483 (1979), *lv den* 406 Mich 979 (1979). However, MCL 421.27(i); MSA 17.529(i) excludes certain seasonal employees in the educational system from collecting unemployment benefits between terms and during summer recesses. With respect to teachers, MCL 421.27(i)(1)(a); MSA 17.529(i)(1)(a), cited above, denies unemployment benefits to individuals performing services in an instructional, research, or principal administrative capacity in the first academic year if there exists a contract or reasonable assurance that the individual will perform service in an instructional, research, or principal administrative capacity for the successive second academic year. A reasonable assurance need not be a formal written or oral agreement to rehire. *Rieske v Grand Rapids Public Schools,* 144 Mich App 790; 376 NW2d 194 (1985).

MCL 421.27(i); MSA 17.529(i), the school denial period provision, is an expression of legislative intent not to protect all persons who might be in a position to claim involuntary unemployment.

*Michigan State Employees Ass'n v MESC,* 94 Mich App 677, 690; 290 NW2d 729 (1980), *lv den* 408 Mich 952 (1980). By providing for the school denial period, the Legislature has uniformly excluded some seasonal employees from benefits for the purpose of protecting the fiscal integrity of the compensation program and may have held the opinion that teachers and other educational employees know of the seasonal layoff well in advance and are not faced with the same "economic crunch" as those who are unpredictably laid off. *Michigan State Employees Ass'n, supra,* pp 692-693. This section is designed to safeguard the stability of school district employment funds, *Larkin, supra,* and to provide economic protection to those teachers who will not be recalled at the start of the school year. *Oak Park Education Ass'n v Oak Park Bd of Ed,* 132 Mich App 680; 348 NW2d 9 (1984), *lv den* 419 Mich 912 (1984).

Claimants Paynes and Whalen contend that the provision denying teachers unemployment benefits during the summer months between academic years if they are offered a contract or reasonable assurance that they will perform services in an instructional, research, or principal administrative capacity the following year must include the requirement that the offer or assurance of employment be one for suitable employment. They urge this Court to read the Michigan Employment Security Act as a whole and incorporate the suitability criteria of MCL 421.29; MSA 17.531, which denies benefits for failing without good cause to apply for or accept suitable work, into the school denial period provision of MCL 421.27(i)(1)(a); MSA 17.529(i)(1)(a). MCL 421.29; MSA 17.531 contains the following criteria for suitability:

"(6) In determining whether or not work is suitable

for an individual, the commission shall consider the degree of risk involved to the individual's health, safety, and morals, the individual's physical fitness and prior training, the individual's experience and prior earnings, the individual's length of unemployment and prospects for securing local work in the individual's customary occupation, and the distance of the available work from the individual's residence.

"(7) Work shall not be considered suitable and benefits shall not be denied under this act to an otherwise eligible individual for refusing to accept new work under any of the following conditions: (a) if the position offered is vacant due directly to a strike, lockout, or other labor dispute; (b) if the remuneration, hours, or other conditions of the work offered are substantially less favorable to the individual than those prevailing for similar work in the locality; (c) if as a condition of being employed, the individual would be required to join a company union or to resign from or refrain from joining a bona fide labor organization."

The board contends that the school denial period provision and suitablility criteria provision are distinct and separate, and that, had the Legislature intended for suitability to be considered when determining whether a contract, offer, or assurance of employment for the following academic year precludes eligibility for unemployment benefits, it would have expressly done so in the school denial period provision.

The MESC also contends that suitability, as defined in MCL 421.29, subds (6) and (7); MSA 17.531, subds (6) and (7), should not be incorporated into the denial provision. However, recognizing the harsh inequities in allowing denial of unemployment benefits to teachers offered substantially inferior positions, the MESC argues that it is permissible to consider wage disparity between the prior and successive academic years in determining whether there has been a reasonable

assurance[2] of employment in an instructional, research, or principal administrative capacity. The MESC in it Manual of Precedents issued a benefit interpretation on June 19, 1978, which stated that more than a 10% reduction in pay between the prior academic year and the successive academic year would negate what would otherwise be a reasonable assurance of employment in the second academic year. Because the MESC is charged with the responsibility for administration of the Michigan Employment Security Act, the MESC argues that its construction of the denial provision is entitled to respectful consideration and should not be overturned without significant reasons. *Margreta v Ambassador Steel Co,* 380 Mich 513, 521; 158 NW2d 473 (1968).

The reason underlying the MESC's position that only economic aspects of suitability can be considered is to avoid the denial of approval and certification of its unemployment program by the United States Secretary of Labor and the loss of federal funds and credits which are dependent upon such approval and certification.[3]

---

[2] We point out that a determination of whether a "reasonable assurance" exists is a determination of whether the *assurance is reasonable, not whether the employment* offered or assured *is itself reasonable.*

[3] The Federal Unemployment Tax Act (FUTA), 26 USC 3301, *et seq.,* imposes a substantial federal excise tax upon the payrolls of private employers. The employer, however, is entitled to credit against the payroll tax up to 90% of any contributions made during the fiscal year to a certified state unemployment compensation fund. The state remits such contributions to the United States Secretary of the Treasury for inclusion in a federal Unemployment Trust Fund. When the need arises, the Secretary authorizes release of the trust fund monies to the state for payment of unemployment benefits. In addition to receiving and disbursing monies for the payment of unemployment benefits, the Secretary of the Treasury is authorized to make payments to the states from both the FUTA and general tax revenues to aid in the administration of certified state unemployment compensation programs. 42 USC 501-504. Also available to states with certified unemployment programs are federal funds for the mainte-

To gain the approval and certification of its unemployment program and qualify for such federal benefits, the state unemployment laws must substantially comply with 26 USC 3304(a)(6)(A) which provides in pertinent part:

"*compensation is payable* on the basis of service * * *, in the same amount, on the same terms, and subject to the same conditions as compensation payable on the basis of other service subject to such law; *except that—*

"(i) *with respect to services in an instructional, research, or principal administrative capacity for an educational institution * * * compensation shall not be payable based on such services for any week commencing during the period between two successive academic years or terms* (or, when an agreement provides instead for a similar period between two regular but not successive terms, during such period) *to any individual if such individual performs such services in the first of such academic years (or terms) and if there is a contract or reasonable assurance that such individual will perform services in any such capacity for any educational institution in the second of such academic years or terms.*" (Emphasis added.)

The MESC contends that if the suitability criteria contained in MCL 421.29, subds (6) and (7); MSA 17.531, subds (6) and (7) are considered in determining the applicability of the school denial provision such consideration will conflict with the United States Department of Labor's interpretation of 26 USC 3304(a)(6)(A) which was issued in the form of questions and answers on November 13, 1978, by Robert Edwards, acting administrator of the unemployment insurance service:

"4. *Question:*
"In applying a between-terms denial provision, may

nance of public employment offices providing job placement, recruitment and other services to unemployed workers. 29 USC 49 *et seq.*

consideration be given to the suitability of the work for which a claimant has a reasonable assurance?

"*Answer:*

"No. The *Federal Law requires that the between terms denial provision* for teachers, researchers, and principal administrators *be applied if the individual has a reasonable assurance of work in any of these capacities.* Thus, a former principal who has a reasonable assurance of a teaching position would be subject to the denial. *Suitability criteria, including the labor standards, are to be considered at the point when a position becomes available, is offered, and is refused.*

"If a State has adopted the optional between-terms denial provision permitted by the FUTA with respect to school workers other than teachers, researchers, and principal administrators, the provision must be applied in the same way. Thus, a librarian with a reasonable assurance of a clerical position, or a secretary with a reasonable assurance of a job on the custodial staff, would be subject to the denial." (Emphasis added.)

We agree with the MESC that wage disparity should be considered before denying a teacher unemployment benefits when a contract or reasonable assurance of employment in an instructional, research, or principal administrative capacity is proffered for the successive academic year. We also agree with the above "interpretation" of the United States Department of Labor[4] to the extent

[4] We point out that construing the "interpretation" by the Department of Labor as limiting consideration of suitability criteria solely to *refusals of offered employment* could lead to undesirable results. Under this "interpretation", a teacher who is offered a contract for employment can either contract for the guaranteed position, or can immediately refuse the employment if he or she views it as unsuitable and, upon a determination that the work is unsuitable, collect unemployment benefits. A teacher receiving a mere "reasonable assurance" of employment could be precluded from collecting unemployment benefits until an offer is actually made which can be refused. It is difficult to see how a "reasonable assurance" of employment, rather than an offer to contract for guaranteed employment, can be "refused" so as to trigger a determination of suitability. A

that, for purposes of the school denial period provision, an offer or reasonable assurance to an employee previously employed in either an instructional, research, or principal administrative capacity of reemployment for the following academic year in *any* of these three capacities is adequate with respect to the *type* of employment. Employment in any of these capacities is legislatively deemed to be appropriate with respect to the type of proffered employment.[5]  26 USC 3304(a)(6)(A); MCL 421.27(i); MSA 17.529(i).

To escape a possible conflict with the federal law, the MESC, as noted above, urges this Court to consider only whether the *economic* terms of the proffered employment in the successive year are reasonably similar to those of the employment in the preceding year. The MESC relies on the reasoning of the Wisconsin Supreme Court in *Leissring v Dep't of Industry, Labor & Human Relations,* 115 Wis 2d 475; 340 NW2d 533 (1983), which interpreted an employment compensation statute similar to that in Michigan. In *Leissring,* the Wisconsin Supreme Court extensively examined the legislative history of the federal unemploy-

---

teacher in this position is left without a contract or absolute guarantee of employment and cannot collect unemployment benefits for the period the reasonable assurance is in effect, although the work may be later deemed unsuitable when the reasonable assurance matures into an offer to contract for employment. Thus the payment of unemployment benefits could easily be avoided by extending reasonable assurances of unsuitable employment, rather than firm offers to contract for employment, until the school year begins. We do not envision this as the intent of the Michigan Employment Security Act which was enacted to ameliorate the effects of involuntary unemployment.

[5] We also point out that, for purposes of MCL 421.29(6); MSA 17.531(6), employment in an *identical* capacity to previous employment is not required for employment to be considered suitable. Although prior training and experience is an aspect of suitability, MCL 421.29(6); MSA 17.531(6), there is no requirement that suitable employment must be employment in a capacity identical to that of a person's customary or previous occupation.

ment provisions and held that a teacher is ineligible for unemployment benefits only if the teacher has a reasonable assurance of performing services in an instructional, research, or principal administrative capacity for the following year on terms and conditions of employment reasonably similar to those in the preceding year. The Court reasoned:

"It is clear that Congress and the Wisconsin Legislature intended that public school teachers, like other state and governmental employes, receive unemployment compensation benefits if eligible. It is also clear that sec. 108.04(17)(a), Stats., does not totally prohibit teachers from receiving unemployment compensation benefits during a summer period between academic years. The legislative history of sec. 108.04(17)(a), and the fedeal provisions on which it is based, indicate that the intent of the limited disqualification in sec. 108.04(17)(a) is to prevent subsidized summer vacations for those teachers who are employed during one academic year and who are reasonably assured of resuming their employment the following year. There is no indication that the legislature intended the disqualification in sec. 108.04(17)(a) to apply to a teacher employed fulltime who becomes unemployed at the end of the academic year, and whose only prospect of employment at that time is not a continuation of his or her previous contract, but merely an offer of substitute teaching with no guarantee of any hours or wages, or a position having substantially decreased wages and hours.

"Given the history of sec. 108.04(17)(a), Stats., and the general purpose of ch. 108, we hold that the phrase 'reasonable assurance that such employee will perform services in any such capacity' in sec. 108.04(17)(a) applies to a teacher employed fulltime who is laid off at the end of the academic year only if: 1) he or she has a reasonable assurance of performing services the following year in an instructional, research, or principal administrative capacity; and 2) if the terms and conditions of the employment for the following year are reasonably similar to those of the teacher's employment

in the preceding year. To interpret sec. 108.04(17)(a) as disqualifying the teacher if he or she merely has some assurance of performing any instructional, research, or principal administrative services the following year, no matter how minimal the wages, hours and benefits might be in comparison to the teacher's wages, hours, and benefits of the preceding year, is not supported by the legislative history, and is contrary to the general purpose of ch. 108.

"A teacher previously employed fulltime who becomes unemployed at the end of an academic year, and whose only employment prospect for the following year is a substitute teaching position involving no guaranteed hours or wages, or a position having a substantial decrease in hours and earning capacity, is immediately confronted with a potential need to find alternative means of economic support. In addition, that individual may need to seek another teaching position in a severely restricted job market. If the teacher wants to secure another fulltime position for the next academic year, he or she must utilize the summer months for this job search, and will need economic aid for this purpose as well. This teacher is confronting a far different situation than the teacher who can look forward to resuming his or her fulltime employment in the fall. If the latter individual seeks unemployment compensation benefits over the summer period, it is possible that he or she is merely seeking a subsidized summer vacation, which sec. 108.04(17)(a), Stats., is intended to prevent. The former teacher, who is unemployed at the end of the year, and realistically may remain unemployed in the fall, is not seeking benefits simply because he or she wants a subsidized summer vacation. Such benefits would likely be needed to meet current and future living expenses and to defray the expenses of seeking new employment. These are precisely the type of circumstances for which unemployment compensation has traditionally been intended. It is unreasonable to assume that this need for unemployment compensation benefits will not arise until the summer period ends.

\* \* \*

It is inconsistent to allow a teacher to retain benefit eligibility when he or she refuses substandard employ-

ment or employment having substantially reduced wages and hours, yet deny eligibility to the teacher during the summer period simply because he or she was offered the possibility of employment with substantially less favorable terms and conditions than those of the teacher's previous employment." *Leissring, supra,* pp 488-492.

We agree with the reasoning in *Leissring, supra,* and hold that the economic terms and conditions of the employment in the successive year must be reasonably similar to those of the preceding year in order for the ineligibility provision to apply.[6] Thus, we hold that, to be denied unemployment benefits purusant to MCL 421.27(i)(1)(a); MSA 17.529(i)(1)(a), the school denial period provision, (1) a teacher must be reasonably assured of reemployment the following year in an instructional, research, or principal administrative capacity, and (2) the economic terms and conditions of the employment for the following year must be reasonably similar to those in the preceding year. See *Johnson v Independent School Dist No 535,* 291 NW2d 699 (Minn, 1980); *Mallon v Employment Div,* 41 Or App 479; 599 P2d 1164 (1979).[7]

The next question presented by the parties is whether the referees' decisions in both cases were supported by competent, material, and substantial evidence on the entire record. MCL 431.38; MSA 17.540.

---

[6] *Leissring, supra,* however, did not address the question of whether other suitability criteria should be considered, perhaps also in order to avoid any potential conflict with the federal law.

[7] We point out that whether or not a teacher has been reasonably assured of reemployment and whether or not the reemployment proferred is comparable to the teacher's previous employment are independent determinations. See fn 2, *supra.* A teacher may be reasonably assured of reemployment in an instructional capacity, but not reemployment on comparable terms, and in this situation the school denial period provision does not render a teacher ineligible for unemployment benefits.

In claimant Paynes's case, the board, assuming *arguendo* that suitability of the terms of the employment can be considered in determining whether a teacher falls within the school denial period provision, argues that the referee's decision that the RES position was not "suitable"[8] because of the disparity of its economic terms with those of Paynes's previous contract employment was not supported by the record. We disagree. The referee in claimant Paynes's case, who was affirmed by the MESC Board of Review and the Wayne County Circuit Court, considered the terms of the RES employment and found that the RES position which resulted in an approximately 40% decrease in remuneration per day did not constitute a reasonable assurance of "suitable" (with respect to wages) reemployment in an instructional capacity. We find that the record supports the referee's finding of this decrease and supports his determination that Paynes was not given reasonable assurance of reemployment sufficiently comparable with respect to remuneration to preclude her from unemployment benefits under the school denial period provision.

The referee in claimant Whalen's case, in denying her unemployment benefits, declined to consider the terms of the RES employment in his determination of whether or not plaintiff was precluded from receiving unemployment benefits pursuant to MCL 421.27(i)(1)(a); MSA 17.529(i)(1)(a).

---

[8] We hesitate to call economic conditions or terms of employment, such as wages and hours, suitability criteria since we are not, in the instant case, determining whether all suitability factors, as defined in MCL 421.27(i)(1)(a), MSA 17.529(i)(1)(a), are to be considered in applying the school denial period provision. Moreover, we do not wish to invite any conflict with federal law regarding consideration of "suitability" factors. However, in considering "suitability" of the RES employment in the instant case, the referee in claimant Paynes's case was clearly considering the economic terms of the employment, not other aspects of suitability.

Thus we remand her case to the MESC referee for such consideration and redetermination of her eligibility for unemployment benefits.

We find it unnecessary at this time to address the issue of whether or not claimants were reasonably assured of reemployment by virtue of the RES letters and applications.[9] In claimant Paynes's case, even if the RES letter and application reasonably assured Paynes of reemployment, since the economic terms of the work proffered were not reasonably similar to those of her previous employment, under our two-part test she was not precluded from receiving unemployment benefits by the school denial period provision. Thus this issue in claimant Paynes's case is moot.

In claimant Whalen's case, the referee found that the RES application constituted a reasonable assurance of reemployment, *i.e.,* reasonably assured Whalen of reemployment, but did not consider the terms of the employment. The circuit court reversed the referee's determination of reasonable assurance of reemployment, finding that the RES employment was too speculative to constitute such assurance, and reinstated the original determination that claimant was entitled to unemployment benefits because she was not reasonably assured of reemployment. *Contra, Rieske, supra;*

---

[9] When a teacher actually contracts for a substantially inferior position, there maybe no need to consider the terms of the unemployment for eligibility for unemployment benefits since the teacher is already employed. In the instant case, however, the MESC referees in both cases predominantly characterized the "agreements" signed by claimants as applications, not contracts, for RES positions. The referee in claimant Whalen's case characterized the agreement as a reasonable assurance of employment, and the circuit court in claimant Whalen's case necessarily found no contract since it found that the application did not even rise to the level of a reasonable assurance. Moreover, although briefly referring to claimants as having contracted for the RES employment, the board, on appeal, does not argue this point in any meaningful manner. Thus we do not consider the issue of whether claimants actually contracted for work and might thus be precluded from unemployment benefits.

but see *Fort Wayne Community Schools v Review Bd of the Indiana Employment Security Division,* 428 NE2d 1379 (Ind App, 1981). However, we do not now consider whether the circuit court erred in reversing the referee's finding of reasonable assurance because if, on remand, upon consideration of the terms of the RES employment, the referee finds that the terms of the RES employment in claimant Whalen's case was not sufficiently comparable to those of complainant's previous employment, this issue, as in complainant Paynes's case, will be dispositive. However, if the referee does not so find, claimant may appeal this determination through normal channels.[10] However, since the referee has already been reversed by the circuit court on the separate issue of whether claimant Whalen, by virtue of the RES application, was reasonably assured of reemployment, we retain jurisdiction solely to consider the question of whether the RES application in claimant Whalen's case reasonably assured her of reemployment the following year.

Affirmed in part, reversed in part and remanded.

---

[10] Although the circuit court did hold that suitability of the proferred employment should be considered in determining eligibility for unemployment benefits, it did not make any findings on the similarity of terms or suitability of claimant Whalen's RES employment and did not reverse on this ground.