GRAND RAPIDS PUBLIC SCHOOLS v FALKENSTERN
GRAND RAPIDS PUBLIC SCHOOLS v McDONALD
GRAND RAPIDS PUBLIC SCHOOLS v HUNSBERGER

Docket Nos. 98730, 98731, 98732. Submitted December 7, 1987, at Grand Rapids. Decided February 23, 1988. Leave to appeal applied for.

Ann Falkenstern, Gwendolyn McDonald, Nancy Hunsberger, and other teachers in the Grand Rapids Public Schools received layoff notices in March, 1981. The school system, in anticipation of severely strained resources, sent layoff notices to approximately 625 members of its staff. One hundred eighty of those laid off were recalled prior to the end of the school year. On June 19, 1981, letters of reasonable assurance were sent to 266 more of the laid off teachers which stated that it was anticipated that those teachers would be offered teaching positions for the 1981-82 school year. On August 14, 1981, some of the teachers were sent a second letter, which rescinded the earlier assurances of fall employment. All but five of the teachers who received the June assurance letter were rehired before the start of the 1981-82 school year. By October 8, 1981, the remaining five teachers were rehired. Thirty of the teachers filed for unemployment compensation benefits for the time they had been laid off. A Michigan Employment Security Commission referee found that those teachers who received the rescission letter were entitled to unemployment compensation only from August 16, 1981, through the date of their ultimate reemployment. Benefits were denied entirely to the other claimants. The Grand Rapids Public Schools appealed to the MESC Board of Review. The board found that Falkenstern, Hunsberger, and twelve others who received the June, 1981, letter were entitled to unemployment compensation for the entire summer period because the school district did not have sufficiently certain budgetary data to offer such assurances in

REFERENCES

Am Jur 2d, Unemployment Compensation §§ 6, 13, 42, 94.

Part-time or intermittent workers as covered by or as eligible for benefits under state unemployment compensation act. 95 ALR3d 891.

the letter. Another fifteen of the teachers were granted compensation up to August 15, 1981, the date the board determined that the school district had the necessary information upon which to base reasonable assurance. The board found that Gwendolyn McDonald had not been sent a rescission letter and, therefore, awarded her benefits from June 21 to August 15 only. The board's decision was appealed to the Kent Circuit Court. The court, Stuart Hoffius, J., reversed, ruling that the assurances had been reasonable. As a result, sixteen of the teachers were denied all benefits and the remaining fourteen teachers were awarded benefits for a reduced period only. Falkenstern and others, McDonald, and Hunsberger filed separate appeals from the decision of the circuit court. The three appeals have been consolidated.

The Court of Appeals *held:*

A circuit court can reverse an order or decision of the MESC Board of Review only if the order or decision is contrary to law or is unsupported by competent, material, and substantial evidence on the whole record. The board's decision that the letter sent to the teachers in June of 1981 did not constitute a reasonable assurance of future employment as required by statute was not contrary to law or unsupported by competent, material, and substantial evidence. The decision of the circuit court is reversed and the order of the MESC Board of Review is reinstated.

Reversed.

1. UNEMPLOYMENT COMPENSATION — APPEAL — SCOPE OF REVIEW.

The courts may review questions of law or fact in an appeal from a decision of the Michigan Employment Security Commission Board of Review but can reverse only if the order or decision is contrary to law or is unsupported by competent, material, and substantial evidence on the record (Const 1963, art 6, § 28; MCL 421.38; MSA 17.540).

2. UNEMPLOYMENT COMPENSATION — APPEAL — MATTERS OF LAW.

Questions presented to the Court of Appeals on appeal from a decision of the Michigan Employment Security Commission are to be treated as matters of law where there is no dispute as to the underlying facts.

3. UNEMPLOYMENT COMPENSATION — EMPLOYMENT SECURITY ACT — DISQUALIFICATION PROVISIONS.

Disqualification provisions in the Michigan Employment Security Act should be narrowly construed in favor of those persons who, through no fault of their own, are involuntarily unemployed (MCL 421.1 *et seq.*; MSA 17.501 *et seq.*).

4. UNEMPLOYMENT COMPENSATION — SCHOOLS — SUMMER RECESSES —
   EMPLOYMENT SECURITY ACT.

   The Michigan Employment Security Act denies unemployment
   benefits to teachers performing services in an instructional,
   research, or principal administrative capacity in the first aca-
   demic year if there exists a contract or reasonable assurance
   that the individual will perform service in an instructional,
   research, or principal administrative capacity for the successive
   second academic year (MCL 421.27[i]; MSA 17.529[i]).

*Anderson & Swets* (by *David W. Swets*), for
Grand Rapids Public Schools.

*Frank J. Kelley,* Attorney General, *Louis J.
Caruso,* Solicitor General, and *Sherwin Vine,* As-
sistant Attorney General, for Michigan Employ-
ment Security Commission.

*Levin, Levin, Garvett & Dill* (by *Erwin B. Ell-
mann* and *Eli Grier*), for claimants.

Before: R. M. MAHER, P.J., and GRIBBS and L. F.
SIMMONS, JR.,* JJ.

PER CURIAM. This is a consolidation of three
separate appeals,[1] all of which involve the claims
of numerous Grand Rapids public school teachers,
the claimants herein, for unemployment compen-
sation benefits for the 1981 summer months. The
Michigan Employment Security Commission Board
of Review determined that all of the claimants
were entitled to unemployment compensation for
at least part of the claimed period because they
had not been given reasonable assurances of em-
ployment for the next school year. The Kent Cir-

---

* Circuit judge, sitting on the Court of Appeals by assignment.

[1] Appeal number 98730, which was filed by Ann Falkenstern and
twenty-seven other teachers, will hereinafter be referred to as the
Falkenstern case. Appeal numbers 98731 and 98732 were filed by
Gwendolyn McDonald and Nancy Hunsberger, respectively, and will
be referred to by the surnames of those individual claimants.

cuit Court reversed that determination, ruling that the assurances had been reasonable. As a result, sixteen of the claimants were denied all benefits and the remaining fourteen claimants were awarded benefits for a reduced period only. It is from that decision that the claimants bring their respective appeals as of right, which were consolidated for consideration by this Court. We reverse the decision of the circuit court and reinstate the decision of the MESC Board of Review.

On March 18, 1981, in anticipation of severely strained resources, Grand Rapids Public Schools sent layoff notices to approximately 625 members of its staff with the lowest seniority. Having worked only three years or less for the school district, claimants were among those who received the notices.

After the layoff notices were sent out, the economic situation worsened. During the summer of 1981, federal assistance was reduced by 1½ million dollars. The school system, fearing further financial deficits, cut its own budget by twelve to thirteen million dollars. The problem was exacerbated because of a steady, three-year decline in student enrollment. Due to the school system's "belt tightening," the school superintendent met with the various employee-bargaining units in an effort to negotiate wage concessions.

Notwithstanding the bleak economic conditions facing the school district, the school system was able to recall 180 of the teachers who were originally laid off before the end of the 1980-81 school year. Moreover, on June 19, 1981, letters of reasonable assurance were sent to 266 teachers, including all of the claimants herein,[2] which stated

---

[2] One claimant, Susan LaPenna, claimed not to have received the assurance letter. Apparently she had moved without informing the district's personnel department and the letter did not reach her.

that "it is anticipated that you will be offered a teacher position for the 1981-82 school year." No explanation was ever given for this new-found optimism.

Subsequently, on August 14, 1981, fourteen of the claimants[3] were sent a second letter, which rescinded the earlier assurances of fall employment. Although the other sixteen claimants did not receive similar letters, they claimed to have no greater hope for reemployment. All the information supplied by the school system to claimants' collective bargaining representative, the Grand Rapids Education Association (GREA), indicated that as many as two hundred teachers would remain laid off as the new school year began. Apparently, the GREA was frustrated in its attempts to obtain more specific information on the matter because the school system declined to disclose how many teachers received the June assurance letter or any other information concerning terms and conditions of teacher employment.

Despite the gloomy employment predictions, all but five of the 180 teachers who received the June assurance letter (including the fourteen claimants who later received the rescission letter) had been rehired only days before the start of the 1981-82 school year on September 9, 1981. By October 8, 1981, the remaining five teachers had also been rehired. Each of the claimants was among those who were rehired.

Sometime thereafter, the claimants filed for unemployment compensation benefits with the MESC. In the Falkenstern case, a MESC referee found that "in spite of the serious financial difficulties experienced by the school district, the letters of assur-

---

[3] The fourteen teachers receiving this rescission letter included thirteen claimants from the Falkenstern case and claimant Hunsberger.

ance were issued with such care and in such good faith that apprehensions about the district's finances could not reasonably been [sic] regarded as a basis for failing to give effect to the employer's statements of assurance." The referee thus held that the claimants who received the rescission letter were entitled to unemployment compensation only from August 16, 1981, through the date of their ultimate reemployment. As to the other claimants, unemployment benefits were denied entirely. The referee made like rulings in both the McDonald and Hunsberger cases.[4]

In all three cases, the decisions of the referee were appealed to the MESC Board of Review. In the Falkenstern case, a two-member majority held that the school system did not have "sufficiently certain budgetary data to offer such assurance" in the June, 1981, letter. Therefore, the thirteen claimants who received such were found to be entitled to unemployment compensation for the entire summer period. The others were granted compensation up to August 15, 1981, the date on which the board believed the school system "had the necessary information upon which to base reasonable assurance." One member of the board dissented, stating:

I disagree with the Board majority and would allow benefits only to those 13 claimants who received the rescission of the reasonable assurance letter and would allow such benefits only for the period from August 16, 1981, through September 5, 1981.

[4] In both these cases, the claimants filed for redeterminations by the referee after the board of review issued its decision in the Falkenstern case, discussed *infra*. On redetermination, the referee reversed his original holdings and found that claimant McDonald was eligible for benefits from June 21 through August 15 (presumably because she did not receive a rescission letter) and that claimant Hunsberger was eligible for benefits for the entire summer (presumably because she did receive the rescission letter).

My review of the record discloses that the employer acted in good faith on the best information available when it sent the June 19, 1981, letters of reasonable assurance. Had it not been acting in good faith, it could have sent such letters to all of the teachers who had not received recall notices.

Section 27(i)(1) of the Act [MCL 421.27(i)(1); MSA 17.529(i)(1)] does not require a guarantee of employment. All that is required is a reasonable assurance. In my opinion, the employer has established such reasonable assurance.

In the McDonald case, the same two-member majority of the board found that the claimant had not been sent a rescission letter and, therefore, awarded her benefits from June 21 to August 15 only. In the Hunsberger case, an opposite conclusion was reached. Because this claimant had received the rescission letter, she was held to be eligible for benefits for the entire summer period. In both cases, one member of the panel disagreed with the majority's decision for the same reasons expressed in the Falkenstern dissent.

Following the board of review's decisions, the school system filed timely appeals in the Kent Circuit Court. The cases were consolidated for a single hearing and determination. In a written opinion issued in January of 1987, the court reversed the majority decisions of the board and adopted the reasoning of the dissents. The court held that the letter sent to each of the claimants in June constituted "reasonable assurance" of future employment, as required by MCL 421.27(i)(1); MSA 17.529(i)(1), so as to deny eligibility for unemployment compensation. As a result, the fourteen claimants who received the August rescission letters were found eligible for benefits only from August 16 to September 5 (the date they were rehired). The remaining claimants were found in-

eligible for any benefits. On February 6, 1987, an order to that effect was entered by the circuit court.

It is from that order that the claimants bring their respective appeals as of right, which we consolidated for our review.

In Michigan, courts may review questions of law or fact on appeal from the MESC Board of Review. Const 1963, art 6, § 28; *Paynes v Detroit Bd of Ed,* 150 Mich App 358, 366; 388 NW2d 358 (1986). However, a circuit court can reverse an order or decision of the board only if it is contrary to law or is unsupported by competent, material, and substantial evidence on the whole record. MCL 421.38(1); MSA 17.540(1); *Paynes, supra.* Where there is no dispute as to the underlying facts, questions presented on appeal are to be treated as matters of law. *Gormley v General Motors Corp,* 125 Mich App 781, 785; 336 NW2d 873 (1983).

Resolution of the instant appeals is dependent upon the interpretation placed on § 27(i)(1) of the Michigan Employment Security Act, MCL 421.27(i)(1); MSA 17.529(i)(1). Generally, the purpose of the act (MCL 421.1 *et seq.*; MSA 17.501 *et seq.*) is to safeguard the general welfare through the dispensation of benefits intended to ameliorate the disastrous effects of involuntary unemployment. *Paynes, supra,* p 367. In light of that purpose, the act is entitled to liberal interpretation. Disqualification provisions should be narrowly construed in favor of those persons who, through no fault of their own, are involuntarily unemployed. *Rogel v Taylor School Dist,* 152 Mich App 418, 424; 394 NW2d 32 (1986). Section 27(i)(1), which is known as the school denial period provision, is one of those disqualification provisions.

Section 27(i)(1) provides that unemployment benefits will be denied to teachers performing services

in an instructional, research, or principal administrative capacity in the first academic year if there exists a contract or *reasonable assurance* that the individual will perform any of the aforementioned services for the successive second academic year. MCL 421.27(i)(1); MSA 17.529(i)(1); *Paynes, supra,* p 367. Although under most circumstances teachers are protected from the hardships of unemployment to the same extent as other employees, § 27(i)(1) operates to bar recovery of unemployment benefits during those periods when teachers traditionally do not work. *Rogel, supra,* pp 423-424. We explained the reason for this exclusion in *Paynes, supra,* p 368:

> By providing for the school denial period, the Legislature has uniformly excluded some seasonal employees from benefits for the purpose of protecting the fiscal integrity of the compensation program and may have held the opinion that teachers and other educational employees know of the seasonal layoff well in advance and are not faced with the same "economic crunch" as those who are unpredictably laid off . . . . This section is designed to safeguard the stability of school district employment funds . . . and to provide economic protection to those teachers who will not be recalled at the start of the school year. [Citations omitted.]

With these principles in mind, we hold that the board of review's decision (i.e., that the letter sent to claimants in June of 1981 did not constitute a reasonable assurance of future employment as required by statute) was not contrary to law or unsupported by competent, material, and substantial evidence.

In finding that the school system's assurance of reemployment was not reasonable, the board of review took into consideration the information

available to the school system and the circumstances which existed at the time. This was not contrary to law. Although the term "reasonable assurance" does not require a formal written or oral agreement to rehire, *Riekse v Grand Rapids Public Schools,* 144 Mich App 790, 792; 376 NW2d 194 (1985), § 27(i)(1) explicitly states that the assurance must be reasonable.[5] To determine whether the assurance was reasonable, the MESC must necessarily consider the information upon which it was based. The MESC is not required to accept on blind faith any assurance given by a school district to one of its employees. If this were so, the school district could unilaterally render § 27(i)(1) meaningless and frustrate the underlying purpose of the Michigan Employment Security Act.

Having determined that the board's decision was not contrary to law, the only thing left for this Court to decide is whether it was supported by competent, material, and substantial evidence. We are convinced that it was. As previously discussed, the financial crisis which precipitated the layoff notices did not subside during the summer of 1981. If anything, it worsened. The student population declined, federal funding was reduced, and the school district's budget was slashed. There was little, if any, reason for optimism.[6] Although the

---

[5] We reject claimants' argument that the reasonableness of an assurance must be determined from the perspective of the employee. The term "assurance," as used in § 27(i)(1), connotes some action taken on the part of the employer. To hold otherwise would, in effect, be saying that an employee has the ability to guarantee himself future employment without regard to the desires of the employer—an absurd and illogical result.

[6] We do not mean to intimate that an assurance of future employment can never be reasonable in times of financial hardship. If the employer can show that there has been a pattern of reemployment despite initial pessimism, assurances may be reasonable even though, at the time, the economic outlook was dim. See *Riekse, supra; Hovey v Employment Security Div Director,* 396 Mass 1012; 487 NE2d 510 (1986); *Samuels v Employment Security Dep't,* 37 Wash App 409; 680

school system's representative testified that the school district could save over three million dollars if the 164 teachers who did not receive the assurance letter were in fact laid off, the board of review did not err in finding that this did not make the assurances reasonable. After all, that sum was only about one-third of the total budget reductions projected in June. While there was evidence from which the MESC could have concluded that the assurances were reasonable, there was equally strong evidence supporting the contrary conclusion.

In closing, we cannot stress strongly enough that it is not the function of the courts to review MESC decisions de novo. Our sole function with regard to the board of review's findings is to determine whether they are contrary to law or unsupported by competent, material, and substantial evidence. Having found that they were not, our inquiry is at an end.

Accordingly, the decision of the circuit court is reversed and the order of the MESC Board of Review is reinstated.

P2d 764 (1984); *Calamusa v Bd of Review,* 164 NJ Super 325; 396 A2d 351 (1978). Here, however, no such pattern of reemployment was shown.