BONNETTE v WEST OTTAWA PUBLIC SCHOOLS

QUINTANILLA v WEST OTTAWA PUBLIC SCHOOLS

RAMOS v WEST OTTAWA PUBLIC SCHOOLS

Docket Nos. 92872-74, 98170-71. Submitted June 10, 1987, at Grand
Rapids. Decided August 27, 1987.

Julie Bonnette, Herlainda Quintanilla, and Guadalupe M. Ramos
were all employed by the West Ottawa Public Schools as part
of a national program to provide education for the children of
migrant farm workers. Bonnette was hired as a teacher and
Quintanilla and Ramos as teacher's aides. The program was
designed so that children of migrant farm workers could begin
school at the regular time in the fall and continue until so
many of the migrant families left the area that the migrant
program would lapse until the migrant families returned in the
spring. The children would attend school wherever they hap-
pened to be and receive credit for their work through the
computerized national program. The migrant program thus
consisted of two segments during each academic year, the first
being held September through October and the second being
held March through June. The period in between was known as
"down time" in the program. Bonnette was a tenured teacher
covered by the master union contract covering all teachers in
the school system, but being lowest on the seniority list, she
was off work during the down time of the program during the
1982-83 academic year. She sought unemployment compensa-
tion benefits, which were denied by the Michigan Employment
Security Commission on the basis of a finding that a denial
period existed under the Michigan Employment Security Act, a
period between two regular terms or an established and cus-
tomary vacation period, for which Bonnette was not entitled to
benefits. Bonnette protested the determination and the MESC
issued a redetermination affirming the earlier decision. Bon-
nette made a timely appeal and a hearing was conducted. The
hearing referee reversed the redetermination of the MESC and
held that Bonnette was not ineligible for benefits under the act.
The MESC Board of Review affirmed and rehearing was denied.
The following year, the same situation arose. Bonnette again
sought benefits and was found ineligible by the MESC. That

determination was affirmed on protest. Bonnette appealed and the matter was consolidated with appeals filed by Herlainda Quintanilla and Guadalupe M. Ramos, teachers's aides in the West Ottawa Public Schools migrant program, who were also off work during the down time during the 1983-84 academic year. Quintanilla and Ramos had also been denied unemployment benefits by the MESC on the basis of a finding that the time they were off work was considered a denial period for which benefits were unavailable. The hearing referee issued a decision reversing the MESC's determination made as to all three claimants, finding that they were not ineligible for benefits under the act. The MESC Board of Review affirmed, and rehearing was denied. The scenario was repeated for Quintanilla and Ramos in the 1984-85 school year. West Ottawa Public Schools appealed to the Ottawa Circuit Court. The court, James E. Townsend, J., affirmed, finding that the periods in question were not established and customary vacation periods and were not periods between two regular terms. West Ottawa Public Schools appealed from each of the five orders issued by the court finding the claimants not ineligible for benefits. The appeals have been consolidated.

The Court of Appeals *held:*

1. The period between the West Ottawa migrant program's fall and spring segments cannot be classified as a period between two successive academic years or a period between two regular terms. Furthermore, even though the period of layoff could be anticipated, it was not a period established as a customary vacation period or holiday recess.

2. The MESC Board of Review and the circuit court did not err in interpreting the language of the act. The board correctly affirmed the determinations of the hearing referees that the claimants were not rendered ineligible for benefits. The circuit court did not err in affirming the decision of the MESC Board of Review.

Affirmed.

UNEMPLOYMENT COMPENSATION — SCHOOLS — TEACHERS AND TEACHER'S AIDES — MIGRANT PROGRAMS — DOWN TIME.

"Down time" in a school system's migrant education program does not qualify as a denial period for purposes of the Michigan Employment Security Act where the beginning and end of the down time were not fixed in advance but, rather, depended on the growing season for crops; under these circumstances, the down time cannot be classified as a period between academic years, a period between two regular terms, or an established and customary vacation period, and teachers and teacher's

aides who are off work during such down time due to low seniority and a lack of work are not ineligible for unemployment compensation benefits under § 27(i) of the Michigan Employment Security Act (MCL 421.27[i]; MSA 17.529[i]).

*Clary, Nantz, Wood, Hoffius, Rankin & Cooper* (by *John H. Gretzinger*), for West Ottawa Public Schools.

*Levin, Levin, Garvett & Dill* (by *Erwin B. Ellmann* and *Eli Grier*), for Julie Bonnette.

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, and *Morris J. Klau,* Assistant Attorney General, for Michigan Employment Security Commission.

Before: J. B. SULLIVAN, P.J., and G. R. McDONALD and J. M. GRAVES, JR.,* JJ.

PER CURIAM. These cases, wherein West Ottawa Public Schools appeals as of right from the May 7 and 13, 1986, and January 6, 1987, orders affirming the decisions of the Michigan Employment Security Commission Board of Review, have been consolidated on appeal. The board had affirmed the hearing referee's determinations that claimants, Julie Bonnette, Guadalupe Ramos, and Herlainda Quintanilla, were not ineligible for unemployment compensation benefits under § 27(i) of the Michigan Employment Security Act, MCL 421.1 *et seq.*; MSA 17.501 *et seq.* We affirm.

Each of the consolidated cases involves a claim for unemployment benefits filed by a West Ottawa Public Schools employee. Julie Bonnette filed such an application with the MESC on October 25, 1982. The MESC denied her claim for benefits. The claim was denied on the basis of a finding that a "denial

---

* Circuit judge, sitting on the Court of Appeals by assignment.

period" existed under § 27(i) of the Michigan Employment Security Act. The MESC determined that it was a period "between two regular terms" or "an established and customary vacation period." Bonnette protested the determination and the MESC issued a redetermination affirming the earlier decision. Bonnette made a timely appeal and a hearing was conducted.

The testimony and other evidence introduced at the hearing indicated the following. Bonnette was employed by West Ottawa Public Schools as a teacher in West Ottawa's "migrant program" in September, 1981. The program was part of a national program to provide education for the children of migrant farm workers. The "regular" portion of the migrant program was conducted during West Ottawa's academic school year in two segments. The first segment was held September through October. The program then lapsed until the second segment, which began in March and ran through June.

Aden Ramirez, Director of the Migrant Program for West Ottawa, testified that the period of November through February, when the migrant program did not operate, was classified as "down time" or "vacation time." Ramirez said that he cautioned each employee of the program about the "down time" prior to hiring.

Bonnette admitted that she knew about how the program operated when she began her employment in the "migrant program." Bonnette worked in the migrant program in the fall of 1980. From November, 1980 to March, 1981, Bonnette had a long-term substitute teaching assignment with West Ottawa. She again taught in the migrant program in the spring of 1981 and the following fall. She was "off" during the "down time" of the program during the winter months of 1981-82. The

first segment of the year for the migrant program ended on October 20, 1982. Bonnette admitted in her testimony that she expected to be called back to teach in the migrant program in the spring of 1983.

The evidence introduced at the hearing established that teachers in the migrant program were paid on a daily basis, while "regular" teachers in the West Ottawa Public School system received an annual salary. However, it was also established that Bonnette was a tenured teacher and was covered by the "master agreement," i.e., the contract covering all teachers in the West Ottawa Public School system. The master agreement contained a provision regarding layoff which stated that seniority would control all layoffs. According to Ramirez, other teachers in the migrant program were absorbed into the regular West Ottawa system during the "down time" of the migrant program. Bonnette was the only teacher he knew of in the migrant program who was not working during the program's "down time." Bonnette was not working due to lack of seniority.

The hearing referee issued a decision reversing the redetermination of the MESC and held that Bonnette was not ineligible for unemployment benefits under § 27(i) of the Michigan Employment Security Act. The referee held that the period between October and March of the migrant program was clearly not a period between "academic years," which is listed as a "denial period" in § 27(i); the referee reasoned that the traditional period between academic years in the West Ottawa Public School system was the period from June to September known as summer vacation. The referee further reasoned that October was not the end of an academic year for the migrant student since the student would not, at that time,

have necessarily received sufficient instruction to complete academic requirements for a particular grade level. The referee went on to hold that the period also was not a "customary vacation period or holiday recess," also a "denial period" under § 27(i); the referee reasoned that the language referred to periods in which the school system was not in session, i.e., when the majority of students and teachers were not in school. The referee cited Thanksgiving and Christmas as examples of such periods. The referee noted that the period in question, October through March, was a period in which the majority of West Ottawa Public School students and teachers were engaged in normal academic functions. The referee opined, finally, that Bonnette had been, in fact, laid off.

The board of review affirmed the referee's decision and rehearing was denied.

Bonnette later made another claim for unemployment benefits in an application filed on October 31, 1983. The MESC denied her claim on the basis that a "denial period" existed under § 27(i) of the Michigan Employment Security Act. The determination was affirmed, after Bonnette's protest.

Bonnette appealed to the MESC Board of Review and the matter was consolidated with appeals from MESC denials of claims filed by Herlainda Quintanilla and Guadalupe Ramos; the claims of Quintanilla and Ramos had been filed on October 21, 1983. Benefits had been denied to Quintanilla and Ramos by the MESC on the basis of a finding that a "denial period" existed under § 27(i) of the Michigan Employment Security Act. The denials had been affirmed in redeterminations.

A hearing was conducted on the consolidated matters. At that hearing it was established that all three claimants, Bonnette, Quintanilla, and Ramos, had been employed by the West Ottawa

Public School system in its migrant program; Bonnette was employed as a teacher and Quintanilla and Ramos were employed as teacher's aides. It was again established that the migrant program was part of a national program. The migrant program had two regular segments, the first in the fall of each academic year (September through October) and the second in the spring of the academic year (March through June).

The first segment of the migrant program began each fall on the same date as West Ottawa's regular school year. The first segment did not have an established end date; the program lapsed whenever the bulk of the migrant workers left the area. Likewise, the second "spring" segment did not have an established start date; it began when the bulk of the migrant workers entered the area. The second segment then ended on the same date as West Ottawa's regular school year.

The national migrant program maintained a central computer in Little Rock, Arkansas. The staff of West Ottawa's migrant program made progress reports and plotted data on each student in the program and the data was entered into the computer. Therefore, when the student was removed from West Ottawa's system, the receiving district was aware of the student's progress; each student thereby received credit for the work completed in the West Ottawa School District. The student was thus advanced through the educational levels.

An example used by the hearing referee, and agreed to as accurate by the director of West Ottawa's program, was as follows. A child beginning the fall term at West Ottawa in the third grade would still be in the third grade when he left West Ottawa's district that October and when he returned to West Ottawa's system in March.

However, because he received credit for work done in each district, he would be advanced to the fourth grade at the end of the academic year if his progress was satisfactory.

There was testimony that Bonnette, Quintanilla, and Ramos had worked in West Ottawa's migrant program in the fall of 1983. The program ended its first segment of the academic year on October 14, 1983, and all three claimants were then out of work. Each of the three was given a "reasonable assurance" by the school district that she would be employed in the migrant program in the spring of 1984.

The evidence indicated that Bonnette was covered by West Ottawa's master agreement with the teachers' union and that, but for her low seniority, she would have been working as a teacher for the district during the months of the academic year when the migrant program was not operating, i.e., she would have "bumped" a teacher of lower seniority.

Quintanilla and Ramos, as teacher's aides, were not covered by any contract. However, there was some testimony that there were seniority procedures employed with regard to the teacher's aides as well.

The hearing referee issued a decision reversing the determinations made as to all three claimants. The referee found that the three were not ineligible for benefits under § 27(i) of the Michigan Employment Security Act. The referee adopted the reasoning of the referee's decision on Bonnette's earlier appeal as the basis for his decision as to Bonnette, Quintanilla, and Ramos.

The board of review affirmed the referee's decision and rehearing was denied.

West Ottawa Public Schools filed claims of ap-

peal in Ottawa Circuit Court as to both orders of the board of review.

Following the submission of briefs and oral argument by the parties, Judge James E. Townsend issued a written opinion affirming the orders of the board of review. The circuit court held that the periods in question were not "established and customary vacation periods." The circuit court noted that West Ottawa did not *fix* in advance an ending date for the fall segment or a beginning date for the spring segment of the migrant program; these dates fluctuated each year with the growing season for crops. Therefore, the circuit court reasoned that West Ottawa had not established, in advance, a vacation period. The circuit court also held that the periods in question were not periods "between two regular terms." The circuit court reasoned that the fall and spring segments of the migrant program did not fit the common concept of regular school terms since the lengths of these segments were irregular and since each segment normally did not result in the completion of particular courses of study or grade levels.

Orders in accordance with the circuit court's opinion were entered in May, 1986. West Ottawa Public Schools claimed appeals from each of the orders in this Court on May 28, 1986. The cases were consolidated by this Court on July 2, 1986.

Claimants Quintanilla and Ramos filed similar claims for unemployment benefits for the "down time" months beginning in October, 1984. The circuit court's January 6, 1987 orders affirming the decision of the board of review's grant of benefits were also appealed by West Ottawa Public Schools and the appeals have been consolidated with the above cases.

At the time the claims for unemployment bene-

fits in question were filed by defendants Bonnette, Quintanilla and Ramos, § 27(i) provided in pertinent part:

Benefits based on service in employment described in section 42(8), (9), and (10) shall be payable in the same amount, on the same terms, and subject to the same conditions as compensation payable on the basis of other service subject to this act, except that:

(1) With respect to service performed in an instructional, research, or principal administrative capacity for an institution of higher education as defined in section 53(2), or for an educational institution other than an institution of higher education as defined in section 53(3), benefits shall not be paid to an individual based on those services for any week of unemployment beginning after December 31, 1977, under either of the following situations:

(a) *The week commences during the period between 2 successive academic years, or during a similar period between 2 regular terms, whether or not successive,* or during a period of paid sabbatical leave provided for in the individual's contract, to an individual if the individual performs the service in the first of the academic years or terms and if there is a contract or a reasonable assurance that the individual will perform service in an instructional, research, or principal administrative capacity for an educational institution in the second of the academic years or terms, whether or not the terms are successive.

(b) *The week commences during an established and customary vacation period or holiday recess* if the individual performs the service in the period immediately before the vacation period or holiday recess, and there is a reasonable assurance that the individual will perform the service in the period immediately following the vacation or holiday recess.

(2) With respect to service performed in other

than an instructional, research, or principal administrative capacity for an educational institution other than an institution of higher education as defined in section 53(3), benefits shall not be paid based on those services for any week of unemployment beginning after December 31, 1977: (a) *which commences during the period between 2 successive academic years or terms* to any individual if that individual performs the service in the first of the academic years or terms and if there is a reasonable assurance that the individual will perform the service in the second of the academic years or terms; or; (b) *which commences during an established and customary vacation period or holiday recess* if the individual performs the service in the period immediately before the vacation period or holiday recess, and there is a reasonable assurance that the individual will perform the service in the period immediately following the vacation or holiday recess. [Emphasis added. MCL 421.27(i); MSA 17.529(i).]

The critical question in the instant case is whether the period of months (usually November, December, January, and February) in which the West Ottawa Public Schools' migrant program did not operate each academic year is a "period between 2 successive academic years," "a similar period between 2 regular terms," or "an established and customary vacation period or holiday recess."

On appeal from a decision of the Michigan Employment Security Commission Board of Review, this Court may review questions of law or fact but can reverse only if the decision is contrary to law or is unsupported by competent, material and substantial evidence on the record. Const 1963, art 6, § 28; MCL 421.38; MSA 17.540; *Washington v Amway Grand Plaza,* 135 Mich App 652; 354 NW2d 299 (1984). Where there is no dispute as to

the underlying facts, questions presented on appeal are to be treated as matters of law. *Laya v Cebar Construction Co,* 101 Mich App 26; 300 NW2d 439 (1980); *Washington, supra.*

In the instant case, there was no dispute as to the major facts. The parties agreed regarding the "set-up" of West Ottawa's migrant program, i.e., it was established that West Ottawa operated fall and spring sessions in its regular migrant program. There was also no dispute that claimants had knowledge of the "set-up" of the migrant program when they were hired. Neither did the parties dispute how claimants' seniority, or lack thereof, affected their unemployment. Therefore, the critical question, i.e., whether there was a "denial period" under § 27(i), is a question of law on appeal.

To determine whether there was a "denial period" as a matter of law in the instant case requires construction of the language of § 27(i). In construing a statute, appellate courts have the duty to ascertain and effectuate the intent of the Legislature. *Lamphere Schools v Lamphere Federation of Teachers,* 400 Mich 104; 252 NW2d 818 (1977).

The Legislature's intent in passing the Michigan Employment Security Act was to safeguard the general welfare through the dispensation of benefits intended to ameliorate the disastrous effects of involuntary unemployment on workers and their families. MCL 421.2; MSA 17.502. It has been held that appellate courts should construe the provisions of the act liberally in order to give effect to this remedial policy. *Laya, supra,* p 34. For the same reason, the disqualification provisions of the act should be narrowly construed by appellate courts. *Laya, supra,* p 35.

I

PERIODS "BETWEEN 2 SUCCESSIVE ACADEMIC YEARS"

The meaning of the term "academic year" was defined by the Legislature in § 27(i) of the Michigan Employment Security Act as follows:

> For the purposes of this subsection, "academic year" means that period, as defined by the educational institution, when classes are in session for that length of time required for students to receive sufficient instruction or earn sufficient credit to complete academic requirements for a particular grade level or to complete instruction in a noncredit course. [MCL 421.27(i)(4); MSA 17.529(i)(4), after amendment, MCL 421.27(i)(8); MSA 17.259(i)(8).]

In the instant case, the proofs advanced at the hearings established that the period between the fall and spring segments of West Ottawa's migrant program was not a period between academic years as this term was defined by the Legislature. The fall segment was not a period conducted for the length of time required for students of the migrant program to receive sufficient instruction or to earn sufficient credit to complete the academic requirements for a particular grade or even for a particular course. The length of the segment was determined instead by the crop season in a particular year and by the resulting number of migrant farm worker children in the school district. The director of the migrant program admitted in his testimony that a migrant student enrolled in the program would not, as a matter of plan, complete a particular grade or a course by the time of his exit from the district (after the fall segment of the program). The student would enter the receiving district at the same grade level, but would receive credit for

work completed in the West Ottawa School District through records kept in a national computer. Theoretically, the national office of the program would allow the migrant student to complete a grade level at the end of the regular academic year, along with the students of the "regular" West Ottawa School District program. Consequently, we believe that, as a matter of law, the period between the West Ottawa migrant program's fall and spring segments could not be classified as a period between two successive academic years.

II

PERIODS "BETWEEN 2 REGULAR TERMS"

Section 27(i) of the Michigan Employment Security Act states that a denial period exists for the "period between 2 successive academic years, or during a *similar period* between 2 regular terms." "Regular terms" is not defined by the Legislature in the act, but we believe that the words "similar period" in § 27(i) indicate the meaning of the term "regular term." The word "similar" indicates that the Legislature intended "regular terms" to indicate a period comparable to "academic year" in that "regular term" would represent a period which was defined by the educational institution as the length of time necessary for completion of the academic requirements for a particular course of study. This definition would comport with the ordinary meaning of the word "term."

Therefore, for the same reasons advanced above in the analysis of "between 2 successive academic years," we believe that the period between the fall and spring segments of West Ottawa's migrant program was not a period between "2 regular terms" as a matter of law.

III

"ESTABLISHED AND CUSTOMARY VACATION PERIODS OR
HOLIDAY RECESS"

Section 27(i)'s language regarding established
and customary vacation periods or holiday recess
has been held to apply to the "summer recess" of a
school district. *Paynes v Detroit Bd of Ed,* 150
Mich App 358; 388 NW2d 358 (1986). The language
of § 27(i) also clearly applies to those periods in
which the school districts recess for holidays, i.e.,
Thanksgiving, Christmas and Easter.

In *Larkin v Bay City Public Schools,* 89 Mich
App 199; 280 NW2d 483 (1979), and *Paynes, supra,*
panels of this Court reasoned that this denial
period was imposed by the Legislature for the
purpose of protecting the fiscal integrity of the
compensation program. It was noted that the Leg-
islature may have held the opinion that teachers
and other educational employees knew of seasonal
layoffs well in advance and were not faced with
the same "economic crunch" as those who suffered
unplanned layoffs.

In the instant case, the period in question, i.e.,
the period between the fall and spring segments of
the migrant program, while a predictable layoff
period because of the history of the program, was
not a recess period similar to the recess periods
taken for summer vacation or for recognized holi-
days. Rather, the period of unemployment was due
to the lack of work resulting from a decrease in
the student population. If the migrant population
had unexpectedly stayed, West Ottawa would no
doubt have continued the employment of Bon-
nette, Quintanilla, and Ramos in the program.
Thus, we find that even though the period of layoff
could be anticipated (since the decrease in the
student population could be anticipated) it was not

a period established as a customary "vacation period" or "holiday recess."

A focus on the reasons for the unemployment of Bonnette, Quintanilla, and Ramos indicates that they would have been working during the "down time" of the migrant program had it not been for their lack of seniority. Other teachers and teacher's aides in the West Ottawa Public Schools' migrant program with greater seniority apparently "bumped" into West's regular program during the months that the migrant program did not operate. Thus all employees of the West Ottawa migrant program were not "off" during the program's "down time."

We therefore conclude that, as a matter of law, the period between the fall and spring segments of West Ottawa's migrant program was not a period which was "an established or customary vacation period or holiday recess."

The board of review and the Ottawa Circuit Court did not err as a matter of law in interpreting the language of § 27(i) of the Michigan Employment Security Act. The board of review, therefore, correctly affirmed the determinations of the MESC hearing referees that Bonnette, Quintanilla, and Ramos were not rendered ineligible by § 27(i). Consequently, the circuit court did not err in affirming the decision of the board of review.

Affirmed.